**STATE of Minnesota, Respondent,**

**v.**

**Ryan James REWITZER, petitioner,**

**Appellant.**

**No. C4–99–807.**

Supreme Court of Minnesota.

Sept. 14, 2000.

---

Bradford Colbert, Assistant State Public Defender, St. Paul, for appellant.

Mike Hatch, Minnesota Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, James R. Olson, Brown

County Attorney, New Ulm, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

Ryan James Rewitzer pleaded guilty to controlled substance crimes in the second, third, and fifth degree for selling, in the course of three separate incidents, a total of 23.8 grams of marijuana and 20.5 grams of mushrooms containing psilocyn. The Brown County District Court then imposed a sentence of 48 months, together with fines and surcharges totaling $273,-600. Rewitzer subsequently filed a petition for postconviction relief with the district court, arguing that the fines violated the Excessive Fines Clauses of the United States and Minnesota Constitutions and that the court abused its discretion when imposing the fines. The postconviction court denied Rewitzer's petition and the Minnesota Court of Appeals affirmed. We reverse.

In September 1997, the New Ulm police investigated appellant Ryan James Rewitzer who, at that time, was 18 years old. The police were assisted in their investigation by a friend of Rewitzer's, who purchased controlled substances from Rewitzer on three occasions while under police surveillance. The friend purchased 23.8 grams of marijuana on September 10, 1997, 11 grams of mushrooms containing psilocyn on September 21, 1997, and 9.5 grams of mushrooms containing psilocyn on September 22, 1997. Following these transactions, the Brown County Attorney charged Rewitzer with (1) controlled substance crime in the fifth degree in violation of Minn.Stat. § 152.025, subd. 1(1) (1998), for selling the 23.8 grams of marijuana, (2) controlled substance crime in the third

degree in violation of Minn.Stat. § 152.023, subd. 1(3) (1998), for selling the 9.5 grams of mushrooms, and (3) controlled substance crime in the second degree in violation of Minn.Stat. § 152.022, subd. 1(3) (1998), for selling the 11 grams of mushrooms.

In November 1997, Rewitzer pleaded guilty to the three charges under a plea agreement whereby the state agreed to recommend that his sentences for the three charged offenses be concurrent. Rewitzer, in turn, agreed that he would not contest civil forfeiture proceedings brought by the state to seize his safe, all his cash, and his 1987 Mazda RX7.[1] The district court accepted Rewitzer's plea, ordered a presentence investigation, and scheduled a sentencing hearing.

The presentence investigation report revealed that Rewitzer had no adult criminal record and three offenses on his juvenile record. The juvenile offenses were: (1) sale of a controlled substance in 1995, (2) discharge of a dangerous weapon in 1993, and (3) shoplifting in 1993. With regard to Rewitzer's use of controlled substances, the report stated that he had attended treatment in the spring of 1995. The report further stated that when Rewitzer was asked why he did not stop abusing controlled substances after treatment he stated

> that he doesn't feel he has a chemical dependency problem because he didn't actively use drugs. What he enjoyed the most was selling the drugs for money. He states he is very money oriented and that is why he had so much cash at home because he likes to feel the money in his hands and look at it and count it.

The corrections officer making the report recommended that Rewitzer be sentenced to serve concurrently a stayed sentence of 12 months and 1 day for the fifth-degree

1. At the time of the plea agreement, Rewitzer's Mazda was worth approximately $2,400 and he had approximately $2,000 in his checking and savings account. At sentencing, Rewitzer's attorney clarified that the checking and savings accounts had been closed, with the contents having been spent for attorney fees.

offense, a stayed sentence of 33 months for the third-degree offense, and an executed sentence of 48 months (with 32 months in prison and 16 months on supervised release) for the second-degree offense.

The presentence report noted that the minimum fines for controlled substance crimes in the fifth, third, and second degree are, respectively, $3,000, $75,000, and $150,000. Nevertheless, the corrections officer recommended that Rewitzer be fined the statutory minimum of $3,000 for the fifth-degree offense, a reduced fine of $7,000 for the third-degree offense, and a reduced fine of $10,000 for the second-degree offense.

At the sentencing hearing and prior to announcing the sentence, the district court stated:

> I think the most telling thing in the Presentence Investigation report is when Mr. Rewitzer said that he doesn't think he has a dependency problem because he didn't actively use the drugs, what he enjoyed the most was selling the drugs for money. He likes the feel of money in his hands, to look at it and count it.
>
> * * * [T]he fines, the mandatory fines are the people of Minnesota, through the legislature, telling people like you, Mr. Rewitzer, that you're not going to make money from selling drugs. There are very significant financial penalties that go with this business of selling drugs, and that's going to be your punishment for a lot longer than boot camp or even the prison sentence I impose; and that is a legislative issue, not a judicial issue. Those are mandatory minimum fines. They could be waived or reduced, it's true; but a young man like you who has had all the advantages, all the support,

all of the ability to earn money, you can help support this big machine that has to spend a lot of my taxpayer's money and everybody in this room to try and catch people like you who want to profit from the sale of drugs * * *.

Following this statement, the district court sentenced Rewitzer to serve the length of time recommended in the presentence report.[2] The court then determined the appropriate fines to impose. Under Minnesota statutes, the maximum fines allowed for controlled substance crimes in the fifth, third, and second degree are, respectively, $10,000, $250,000, and $500,000. *See* Minn.Stat. §§ 152.025, subd. 3(a); 152.023, subd. 3(b); 152.022, subd. 3(b) (1998). Minnesota Statutes § 609.101, subd. 3(a) (1998) states that "[n]otwithstanding any other law, when a court sentences a person convicted of a controlled substance crime * * *, it must impose a fine of not less than 30 percent of the maximum fine authorized by law * * *."

Using this statutory formula to arrive at the minimum fines for Rewitzer's offenses, the court imposed a $3,000 fine for the fifth-degree offense, a $75,000 fine for the third-degree offense, and a $150,000 fine for the second-degree offense. These fines totaled $228,000. In addition to these fines, the court imposed $45,600 in surcharges pursuant to Minn.Stat. § 609.101, subd. 1(a) (1996).[3] Rewitzer's fines and surcharges totaled $273,600.

In February 1999, Rewitzer brought a postconviction petition asking the district court to vacate or decrease the fines imposed, or stay a portion of the fines. The postconviction court denied the petition, stating:

---

**2.** After his sentencing, Rewitzer was accepted into the Challenge Incarceration Program, which is also referred to as "boot camp." After being released from prison, he began working at a job that paid $8.00 an hour.

**3.** Minnesota Statutes § 609.101, subd. 1(a) has since been repealed. *See* Act of Apr. 6,

1998, ch. 367, Art. 8, § 26, 1998 Minn. Laws 756. Subdivision 1 provided that if a sentence for a felony "includes payment of a fine of any amount, including a fine of less than $100, the court shall impose a surcharge on the fine of 20 percent of the fine." Minn.Stat. § 609.101, subd. 1 (1996).

Sentencing courts have been under a great deal of pressure and criticism for not following the sentencing mandate through the Minnesota legislature. Although this court firmly believes that the sentencing court should have discretion to tailor a sentence to fit the crime and the particular defendant, it seems beyond the belief of this court, which is also the sentencing court, that the court could be found to have abused its discretion and/or to have violated the constitution by following the statutory mandate.

Rewitzer filed an appeal with the court of appeals, arguing that the $273,600 in fines imposed by the district court violated the Excessive Fines Clauses of the United States and Minnesota Constitutions. The court of appeals affirmed, holding that these fines were not excessive. The court of appeals reasoned that while the district court may reduce fines under Minnesota Statutes, it is not required to do so. *See State v. Rewitzer,* 1999 WL 1216598, at \*2 (Minn.App. Dec.21, 1999). The court of appeals noted that the district court "carefully scrutinized [Rewitzer's] previous criminal history and his strong financial motivation for selling drugs[,] \* \* \* did not credit [Rewitzer's] promise to reform, and found that previous judicial leniency had done nothing to rehabilitate him." *Id.* The court of appeals reasoned that the fines were "proportionately severe" because drugs are one of the greatest problems in the United States, and the gravity of the offenses was increased by Rewitzer's profit motive, enjoyment of earning money by selling drugs, recidivism, and regularity in his drug dealing. *Id.* at \*2–3. The court further reasoned that the $273,600 in fines and surcharges do not impose any immediate hardship because Rewitzer is paying the amount in monthly installments of $70 and because he is young, employed, and has long-term future earning potential. *See id.* at \*3. On appeal to this court, Rewitzer again argues that the fines imposed by the district court violate the Excessive Fines Clauses of the United States and Minnesota Constitu-

tions. After receiving Rewitzer's brief, the state moved to strike material in the brief and appendix. We did not dispose of this motion prior to oral argument.

## I.

█ We first address the state's motion to strike. The state argues that certain documents in Rewitzer's brief and appendix are outside the record on review and should not be considered. The challenged material refers to and contains various Minnesota and federal sentencing statistics. These statistical compilations are public record and the state did not contest the submission of similar material in the courts below. As we previously stated in *In re Estate of Turner,* "we see no reason why a party may not submit \* \* \* a report to us as part of its brief when we could refer to such a report in the course of our own research, if we were so inclined." 391 N.W.2d 767, 771 (Minn.1986). Accordingly, the state's motion to strike is denied.

## II.

We begin our analysis of the substantive issue that Rewitzer raises by noting that it is necessary to address this issue in two steps. First, we review Minn.Stat. § 609.101, subd. 3(a), the statute upon which the district court relied in imposing the contested fines, to determine whether it is constitutional on its face. Second, if the statute is constitutional on its face, then we focus our review on how the district court applied section 609.101, subd. 3(a) in order to determine whether such application was constitutional.

█ When we subject the fines in this case to an Excessive Fines Clause analysis, we must first decide whether section 609.101, subd. 3(a) establishes mandatory minimum fines for controlled substance offenses. In considering Rewitzer's petition for postconviction relief, the district court implied there could be no abuse of discretion in imposing the contested fines

because the fines were legislatively mandated minimums. Likewise, the court of appeals and the state also classify the fines as "mandatory minimums." In contrast, Rewitzer does not characterize the fines as mandatory minimums. Rather, he argues that section 609.101, subd. 3(a) was unconstitutionally applied.

As previously noted, Minnesota statutes establish maximum fines for controlled substance crimes. *See, e.g.,* Minn.Stat. §§ 152.025, subd. 3(a); 152.023, subd. 3(b); 152.022, subd. 3(b). Section 609.101, subd. 3(a) further provides that "[n]otwithstanding any other law, when a court sentences a person convicted of a controlled substance crime * * *, it must impose a fine of not less than 30 percent of the maximum fine authorized by law * * *." However, Minn.Stat. § 609.101, subd. 5(b) (1997 Supp.) also provides:

> If the defendant qualifies for the services of a public defender or the court finds on the record that the convicted person is indigent or that immediate payment of the fine * * * would create undue hardship for the convicted person or that person's immediate family, the court may reduce the amount of the minimum fine to not less than $50.

This language demonstrates that while the aforementioned controlled substance offenses carry minimum fines, the district court has broad discretion to impose significantly lower fines if it makes specific findings that immediate payment of the fine would create undue hardship for the convicted person. *See* Minn.Stat. § 609.101, subd. 5(b). Thus, even though section 609.101, subd. 3(a) purports to mandate minimum fines, the apparent strictness of that direction is obviated by subdivision 5(b), which permits courts to reduce the fine to not less than $50. We conclude that it is a misnomer to refer to the minimum fines suggested in section 609.101, subd. 3(a) as "mandatory minimums," and therefore the statute does not on its face violate the Excessive Fines Clauses of either the United States or Minnesota Constitutions.

## III.

■ Having concluded that section 609.101, subd. 3(a) does not establish mandatory minimum fines, we must direct our review to whether the district court's application of the statute violated the Excessive Fines Clauses. Resolution of this issue requires interpretation of a constitutional provision. *See* U.S. Const. amend. VIII; Minn. Const. art. I, § 5. This raises a legal question that we review de novo. *See In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993); *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992).

Both the United States and Minnesota Constitutions protect individuals from excessive fines. *See* U.S. Const. amend. VIII; Minn. Const. art. I, § 5. We have stated that "[a] large discretion is necessarily vested in the legislature to impose penalties sufficient to prevent the commission of an offense, and it would have to be an extreme case to warrant the courts in holding that the constitutional limit has been transcended." *State v. Rodman,* 58 Minn. 393, 402, 59 N.W. 1098, 1100 (1894); *see also State v. Moilen,* 140 Minn. 112, 115, 167 N.W. 345, 346 (1918). Aside from these general comments regarding legislative discretion, we have never substantively applied the Excessive Fines Clause. Therefore, the issue presented here is one of first impression for our court.

Similarly, for many years, the most that the United States Supreme Court did was to define the Excessive Fines Clause as a limit on government power to "extract payment, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States,* 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (quoting *Browning–Ferris Indus. v. Kelco Disposal,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (emphasis added)). More recently, however, the Supreme Court applied the Excessive Fines Clause in *United States v. Bajakajian,* 524 U.S.

321, 327, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). Accordingly, we look to *Bajakajian* for guidance on how to apply the Excessive Fines Clause in this case.

In June 1994, Hosep Bajakajian was leaving the United States from the Los Angeles International Airport when customs inspectors discovered that he was carrying $357,144 in currency. *See id.* at 324, 118 S.Ct. 2028. Bajakajian was charged with violating a federal statute requiring that persons transporting more than $10,000 in currency from the United States report that they are doing so. *See Bajakajian*, 524 U.S. at 325, 118 S.Ct. 2028 (citing 31 U.S.C. § 5316(a)(1)(A) (1994)). Federal statutes further provided that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section * * * 5316, * * * shall order that the person forfeit to the United States any property, real or personal, involved in such offense * * *." *See Bajakajian*, 524 U.S. at 325, 118 S.Ct. 2028 (quoting 18 U.S.C. § 982(a)(1) (1994)). Therefore, the federal grand jury indicted Bajakajian on a separate count seeking forfeiture of the $357,144 seized from him. *See id.*

Bajakajian pleaded guilty to the first count, and a bench trial was held on the separate count seeking forfeiture, after which the district court found that the entire amount of $357,144 was subject to forfeiture because it was "involved in" the offense. *Id.* at 325–26, 118 S.Ct. 2028. However, the court went on to determine that full forfeiture would be "extraordinarily harsh," "grossly disproportionate to the offense in question," and therefore would violate the Excessive Fines Clause. *Id.* at 326, 118 S.Ct. 2028. Accordingly, the court ordered forfeiture of $15,000, three years probation, and a $5,000 fine. *See id.*

On appeal, the Ninth Circuit Court of Appeals affirmed, holding that the forfeiture statute violated the Excessive Fines Clause. *See id.* at 327, 118 S.Ct. 2028. The Supreme Court granted certiorari. *See id.* After concluding that a forfeiture constituted a fine for the purposes of the Excessive Fines Clause, the Court acknowledged that it had not previously articulated a standard for determining whether a fine is excessive. *See id.* at 334, 118 S.Ct. 2028. However, the Court stated that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* (citing *Austin*, 509 U.S. at 622–23, 113 S.Ct. 2801).

The Supreme Court then formulated a standard for evaluating the constitutionality of a fine under the Excessive Fines Clause by relying on its case law interpreting the Cruel and Unusual Punishments Clause. *See Bajakajian*, 524 U.S. at 336, 118 S.Ct. 2028. Specifically, the Court adopted the standard of gross disproportionality as articulated in *Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and held that a fine is unconstitutionally excessive if it is grossly disproportional to the gravity of the offense. *See Bajakajian*, 524 U.S. at 336, 118 S.Ct. 2028. In *Solem*, the Court provided three factors to consider in determining proportionality: (1) the gravity of the offense and the harshness of the penalty, (2) comparison of the contested fine with fines imposed for the commission of other crimes in the same jurisdiction, and (3) comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions. *See Solem*, 463 U.S. at 290–92, 103 S.Ct. 3001.

Applying this test to the facts before it in *Bajakajian*, the Supreme Court first noted that Bajakajian's offense was purely a reporting offense. *See Bajakajian*, 524 U.S. at 337, 118 S.Ct. 2028. Therefore, Bajakajian could have transported the money legally if he had reported it. *See id.* The Court further noted that Bajakajian's violation was not related to any other illegal activity and that, under the Federal Sentencing Guidelines, the maximum fine

was $5,000. *See id.* at 338, 118 S.Ct. 2028. Finally, the Court concluded that the harm to the government was minimal. *See id.* at 339, 118 S.Ct. 2028. The Court therefore held that full forfeiture of the $357,144 would violate the Excessive Fines Clause. *See id.* at 344, 118 S.Ct. 2028.

Under the Supreme Court's decision in *Bajakajian*, we must examine the *Solem* factors in order to determine whether the district court violated the Excessive Fines Clause when it imposed the fines against Rewitzer. The district court assessed fines and surcharges against Rewitzer in the amount of $273,600 for three controlled substance crimes. This amount was comprised of fines of $3,000, $75,000, and $150,000 for the fifth-, third-, and second-degree offenses, respectively. The amount also included $45,600 in surcharges.

The first *Solem* factor compares the gravity of the offense with the severity of the fine. The court of appeals, in holding that the contested fines were not excessive, relied almost exclusively on the Supreme Court's recognition that drug offenses pose a serious threat to individuals and society. *See Rewitzer,* 1999 WL 1216598, at *2. More specifically, the court of appeals stated that drug use and distribution is one of the greatest problems affecting the health and welfare of our population. *Id.* Both the district court and the court of appeals also relied on certain aggravating factors, including Rewitzer's juvenile record and his profit motive. *Id.* at *3. While we concur with the Supreme Court's recognition that drug offenses are serious, the Excessive Fines Clause limits the amount of punishment that can be meted out for these offenses. We note that the fines and surcharges imposed on Rewitzer were 1,368 times

greater than the value of the drugs involved.[4] We further note that at Rewitzer's current rate of repayment, it will be well over 300 years before his fines are paid off. These disparities, at a minimum, suggest a lack of proportionality in Rewitzer's sentence.

The second *Solem* factor compares Rewitzer's fines with fines imposed for the commission of other crimes in Minnesota. Our discussion of this factor begins with Rewitzer's least serious offense. Minnesota Sentencing Guidelines classify controlled substance crimes in the fifth degree as a level 2 offense. *See* Minn.Stat. Ann. § 244 app. at 556 (West 1998). Numerous other crimes are classified as level 2 offenses, all of which have statutorily prescribed maximum fines. *See generally id.* at 555–65. Most level 2 offenses carry maximum fines of $10,000. *See, e.g.,* Negligent Fires—Damage Exceeds $10,000, Minn.Stat. § 609.576, subd. 1(b)(3) (1996) ($5,000 maximum fine); Defeating Security on Realty—$2,500 or less, Minn.Stat. § 609.615 (1996) ($10,000 maximum fine); Check Forgery—$200–$2,500, Minn.Stat. § 609.631, subd. 4(3)(a) (1996) ($10,000 fine).

Minnesota statutes provide a maximum $250,000 fine for a third-degree controlled substance crime and a maximum $500,000 fine for a second-degree controlled substance crime. *See* Minn.Stat. §§ 152.023, subd. 3(b); 152.022, subd. 3(b). Under Minnesota Sentencing Guidelines, these offenses are classified, respectively, as a level 6 offense and a level 7 offense. *See* Minn.Stat. Ann. § 244 app. at 556. Of the other offenses classified as level 7, the highest maximum fine is $50,000 for unsafe release during a kidnapping. *See id.* at 559; Minn.Stat. § 609.25, subd. 2(2) (1998). The maximum fines for the other level 7 offenses range from $20,000 to $35,000.[5]

---

4. According to the Minnesota Bureau of Criminal Apprehension, one pound of marijuana generally sells for between $800 and $3,000 and one pound of mushrooms is worth approximately $1,000. Rewitzer was convicted for selling 23.8 grams of marijuana and a

total of 20.5 grams of mushrooms. Therefore, the street value of the drugs sold in this case was most likely less than $200.

5. *See generally* Minn.Stat. Ann. § 244 app. at 555–65. Level 7 offenses include: Minn.Stat.

Therefore, the fines imposed on Rewitzer were substantially higher than the fines authorized for other similarly ranked offenses.[6]

The third and final *Solem* factor compares the contested fines with fines imposed for commission of the same crimes in other jurisdictions. Under Federal Sentencing Guidelines, Rewitzer's offenses are level 6 offenses. *See U.S. Sentencing Guidelines Manual* § 2D1.1 (1998). The recommended fine for a level 6 offense is between $500 and $5,000. *See id.* § 5E1.2. Under this recommended range, the most that Rewitzer could have been fined for his three offenses was $15,000. *See id.* Further, in examining the sentencing statutes for similar drug offenses in other states, we have determined that most states do not impose mandatory minimum fines and have maximum fines that are less than the fines imposed here.

Based on our analysis of the *Solem* factors, we conclude that the fines and surcharges that the district court imposed on Rewitzer were disproportionately harsh when compared with (1) the gravity of his offenses, (2) the fines that can be imposed for other same-level offenses in Minnesota, and (3) the fines imposed for the same offenses in other jurisdictions. We also conclude that these fines and surcharges create an undue hardship for Rewitzer. *See* Minn.Stat. § 609.101, subd. 5(b). Therefore, we hold that the district court improperly sentenced Rewitzer because the fines and surcharges imposed by the court violated the Excessive Fines Clauses of the United States and Minnesota Constitutions.

Reversed and remanded for proceedings consistent with this opinion.

---

§§ 609.20(3)-(4) (first-degree manslaughter); 609.205(1) (second-degree manslaughter-culpable negligence); 609.21, subds. 1(1)-(2), 3(1)-(2) (criminal vehicular homicide and injury-death); 609.228 (great bodily harm caused by drug distribution); 609.245 (aggravated robbery); 609.25, subd. 2(2) (kidnapping-unsafe release); 609.2664(3) (first-degree manslaughter of an unborn child); 609.2665(1) (second-degree manslaughter of an unborn child); 609.343, subd. 1(c)-(f), (h), subd. 2 (second-degree criminal sexual conduct); 609.344, subd. 1(c)-(d), (g)-(k), subd. 2 (third-degree criminal sexual conduct); 609.377 (malicious punishment of a child—great bodily harm); 609.487, subd. 4(a) (fleeing police officer resulting in death); 609.561 (first-degree arson); 609.582, subd. 1(b)-(c) (first-degree burglary with weapon or assault) (1998).

6. Minnesota sentencing statistics indicate that in the year Rewitzer was sentenced, 2,127 defendants were sentenced for felony level drug offenses. Approximately 33 percent of these defendants were not fined, and fewer than 40 defendants received a fine in excess of $50,000. Only three defendants received fines greater than $100,000, one of which was later stayed. Both of the two remaining defendants, including Rewitzer, were sentenced by the same district court judge.