**STATE of Minnesota, Respondent,**

v.

**Scott Thomas KUJAK, Appellant.**

**No. C2–01–855.**

Court of Appeals of Minnesota.

Jan. 15, 2002.

Review denied March 25, 2002.

---

Mike Hatch, Attorney General, St. Paul; and Charles E. MacLean, Winona County Attorney, Nancy L. Bostrack, Assistant County Attorney, Winona County Courthouse, Winona, for respondent.

Lisa Lodin Peralta, Minneapolis; and Earl P. Gray, Gray & Malacko Law Offices, St. Paul, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, CRIPPEN, Judge, and FOLEY, Judge.

## OPINION

FOLEY, Judge.*

In this postconviction appeal from a sentencing order for drug-related racketeering, appellant argues that (1) his "typical" drug dealing activities do not justify an upward durational departure, (2) the $100,000 fine is unconstitutionally excessive, and (3) restitution to a drug task force is improper. Because the court did not abuse its discretion by imposing an upward departure, did not impose a fine grossly disproportional to the offense, and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

simply mischaracterized reimbursement as restitution in an amended order, we affirm.

## FACTS

Appellant Scott Thomas Kujak was charged by indictment with racketeering in violation of Minn.Stat. § 609.903, subd. 1(1) (2000). The grand jury heard testimony stemming from a 30–day investigation of Kujak, during which his telephones and pager were intercepted.

On May 10, 1999, Kujak, then 21 years old, pleaded guilty to racketeering. He admitted to selling crack cocaine (cocaine) during parts of 1998 and 1999 in Winona County. He also admitted to buying cocaine from his uncle, selling it to others, and recruiting others, including juveniles, to sell it for him. Kujak also set up a business to hide his drug dealing. He specifically admitted to 13 predicate crimes as part of his plea, including 13 separate cocaine sales of .6 to 3 grams each, two conspiracies to import cocaine from across state borders, and possession of approximately 17 grams of cocaine with intent to sell. Kujak also admitted that from these sales he made substantially more than the $12,200 reported on his 1998 tax return.

Kujak was sentenced on July 5, 2000. Before sentencing, the court had as exhibits the wiretap applications and the grand jury transcripts. The court determined Kujak's crime was a severity level VIII offense and sentenced him to 162 months in prison, an upward departure from the presumptive 122 months, or the range of 117 to 127 months. At the sentencing hearing, the court found Kujak indigent and ordered him to pay (1) a fine of $100,000, (2) a surcharge of $30,000, and (3) an assessment of $30. In addition, the court ordered Kujak to reimburse the Southeastern Drug Task Force $950 for costs of prosecution. After the postconviction motions, the court amended its order on May 18, 2001, by reducing the surcharge from $30,000 to $25, reducing the assessment from $30 to $5, and ordering "restitution" to the Southeastern Drug Task Force in the amount of $950. The initial fine of $100,000 remained unchanged.

## ISSUES

1. Did the sentencing court abuse its discretion by imposing an upward durational departure from the presumptive sentence?

2. Does the fine the court imposed on Kujak violate the excessive-fines clause of the United States and Minnesota Constitutions?

3. Did the sentencing court abuse its discretion in ordering that Kujak reimburse the drug task force?

## ANALYSIS

### I.

■ The district court sentenced Kujak to 162 months for his racketeering conviction. This was an upward durational departure from the presumptive 122–month sentence for the offense, or the presumptive range of 117 to 127 months. Under the plea agreement, the court could consider the grand jury transcripts and the wiretap applications, and could assign severity level VIII or IX to the offense. The court assigned severity level VIII to Kujak's racketeering offense. Kujak argues the district court abused its discretion by relying on factors that are "typical" of racketeering in departing upwardly.

■ A district court may depart from the presumptive sentence provided by the guidelines when a case involves "substantial and compelling circumstances." Minn. Sent. Guidelines II.D. When considering a departure "as to duration, a sentencing

court must 'analyze the act as compared with other acts constituting the same offense.'" *State v. Behl,* 573 N.W.2d 711, 713 (Minn.App.1998) (quoting *State v. Herrmann,* 479 N.W.2d 724, 728–29 (Minn. App.1992), *review denied* (Minn. Mar. 19, 1992)), *review denied* (Minn. Mar. 19, 1998). When the record "'supports findings that substantial and compelling circumstances exist, this court will not modify the departure unless it has a 'strong feeling' that the sentence is disproportional to the offense.'" *State v. Woelfel,* 621 N.W.2d 767, 774 (Minn.App.2001) (quotation omitted), *review denied* (Minn. Mar. 27, 2001).

The district court found the following "aggravating factors" justifying an upward departure: (1) Kujak committed a major controlled-substance crime because he was involved in 13 separate transactions; (2) Kujak transferred cocaine for resale by another; (3) packaging the drugs constituted manufacturing the drugs for use by other persons; (4) Kujak occupied a high position in the drug distribution hierarchy; (5) the offense required a high degree of sophistication; (6) racketeering occurred over a lengthy period of time; and (7) Kujak committed the crime as one in a group of three or more persons actively participating in the crime. Kujak argues that, absent weapons, violence, and large amounts of drugs and money, these factors are "typical" for racketeering and do not justify an upward departure.

Under Minnesota law, a person is guilty of racketeering if the person is "employed by or associated with an enterprise and intentionally conducts or participates in the affairs of the enterprise by participating in a pattern of criminal activity." Minn.Stat. § 609.903, subd. 1(1) (2000) (RICO). By pleading guilty to racketeering, Kujak pleaded guilty to organized, not sporadic, run-of-the-mill, criminal activity.

*See State v. Huynh,* 519 N.W.2d 191, 195 (Minn.1994). He pleaded guilty to his involvement in an enterprise with (1) a common purpose among the individuals associated with it, (2) an ongoing organization whose members function under some structure, and (3) an ascertainable structure under which the underlying criminal acts are coordinated into a pattern of racketeering activity. *See State v. Kelly,* 519 N.W.2d 202, 204–05 (Minn.1994) (listing characteristics of enterprise under RICO statute).

At this time, Minnesota has no body of law by which this court can compare drug-related racketeering activities and define a "typical" drug-related RICO offense. However, the sentencing guidelines' non-exclusive list of aggravating factors applies to all offenses, including racketeering. *See* Minn. Sent. Guidelines II.D.2.b (listing factors that may be used as reasons for departure). As is the case with other drug-related offenses, two or more of those factors would distinguish Kujak's offense from a typical offense and would justify an upward departure. *Id.,* II.D.2.b(5). It is clear from the guidelines that weapons and violence and large quantities of money or contraband are not the only aggravating factors justifying departure.

Kujak's admissions in his guilty plea alone, independent of the volumes of damaging grand jury testimony, provide sufficient aggravating factors justifying an upward departure. Kujak pleaded guilty to 13 separate sales of cocaine (within the 13 predicate crimes), most of which took place in April 1999, but some of which occurred as early as March 1998. He admitted to being in the business during both years. Although the sales were primarily in amounts that could be considered "for personal use," Kujak also admitted to one attempted, but unsuccessful, transfer of 25 grams and to possession of approximately

17 grams with the intent to sell at the time of his arrest. While Kujak challenges the court's characterization of his racketeering as involving a "high degree of sophistication or planning," he set up a business to hide his illegal activities, investigated competition in the drug business, and used pagers, cell phones, and customer identification numbers to conduct his business. He also admitted to using juveniles, those mentioned in the indictment and others, to sell cocaine, and to setting up another individual in the cocaine business in September 1998. Kujak typically packaged the cocaine in baggies and specifically avoided touching it to avoid detection by his probation officer. From illegal cocaine sales, he made significantly more than the $12,200 reported as his gross income for the tax year 1998.

The penalty our state legislature imposed for a RICO conviction is up to 20 years in prison. Minn.Stat. § 609.904, subd. 1 (2000). "The legislature clearly intended to punish severely those persons who engage in racketeering." *Huynh*, 519 N.W.2d at 198. The Minnesota legislature also intended to allow courts broad discretion in sentencing for racketeering by making it an unranked crime and subjecting it to the same departure guidelines as other offenses. *See* Minn. Sent. Guidelines II.D. & V. Consequently, courts exercise their discretion twice in the sentencing of a racketeer—first by assigning a severity level, and then by deciding whether to depart from the guidelines. Under the facts of this case, we conclude the district court properly exercised its broad discretion by imposing an upward durational departure.

## II.

■ In its postconviction order, the district court fined Kujak $100,000. Pursuant to the plea agreement, the parties agreed that they could argue freely the issue of fines, costs, surcharges, and assessments. Kujak argues that the court imposed an excessive fine violating the United States and Minnesota Constitutions.

■ Both the United States and Minnesota Constitutions protect individuals from excessive fines. U.S. Const. Amend. VIII; Minn. Const. art. I, § 5. Whether the imposition of a fine violates these constitutional provisions presents a question of law that a reviewing court examines de novo. *State v. Rewitzer*, 617 N.W.2d 407, 412 (Minn.2000). In reviewing the district court's decision, this court is mindful of the "broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983) (footnote omitted).

■■ No penalty is per se constitutional. *Id.* at 290, 103 S.Ct. at 3009, 77 L.Ed.2d 637. A fine is unconstitutional as applied if the fine is "grossly disproportional to the gravity of the offense." *Rewitzer*, 617 N.W.2d at 413 (citing *United States v. Bajakajian*, 524 U.S. 321, 337, 118 S.Ct. 2028, 2038, 141 L.Ed.2d 314 (1998)). Disproportionality depends on three factors:

1. the gravity of the offense and the harshness of the penalty,

2. a comparison of the contested fine with fines imposed for the commission of other crimes in the same jurisdiction, and

3. a comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions.

*Rewitzer*, 617 N.W.2d at 413 (citing *Solem*, 463 U.S. at 290–92, 103 S.Ct. at 3001, 77 L.Ed.2d 637). No one factor is dispositive.

*Helm*, 463 U.S. at 290 n. 17, 103 S.Ct. at 3010 n. 17, 77 L.Ed.2d 637.

### A. *Gravity of the Offense and Harshness of the Penalty*

The Minnesota Legislature has targeted both racketeering activity and controlled-substance crime because of their social and economic impact and has set severe maximum penalties for both. Minn.Stat. §§ 609.901, .904, subd. 1, 152.021, subd. 3 (2000) (RICO and controlled-substance crime statutes allow fines of up to one million dollars). Drug-related racketeering, therefore, is a combination of two of the most severe criminal activities covered by our criminal code. Upon a plea to or verdict of guilty of racketeering, the court is no longer concerned with isolated drug sales and the "run-of the mill" criminal offender. *See Huynh*, 519 N.W.2d at 194.

Kujak was involved in an enterprise whose purpose was to distribute crack cocaine for profit. His offense was aggravated by his long-term involvement, large circle of associates, importation from out-of-state, and distribution in his hometown. His business disregarded the safety and welfare of his sellers and buyers, and the community as a whole. In short, Kujak's offense was grave.

■ The harshness of a penalty may be determined by comparing it to the gross profits gained through the illegal activities. *See Rewitzer*, 617 N.W.2d at 414 & n. 4 (determining $273,000 fine and surcharges was 1,368 times the $200 street value of drugs sold); Minn.Stat. § 609.904, subd. 2 (2000) (providing alternative fine provision for racketeering using a basis of three times the gross value gained or the gross

loss caused, whichever is greater). Kujak's illicit profits from his two years of racketeering are unclear. Nevertheless, he admits to making, in 1998 alone, substantially more than $12,200 from his drug dealing. In the predicate acts Kujak admitted to under the guilty plea, the transactions involved 82.8 grams of cocaine with an estimated value of $5,980. Based on the figures available from Kujak's admissions alone, therefore, the $100,000 fine was less than ten times the gross profits and not unduly harsh.

### B. *Comparison To Other Minnesota Crimes*

■ The second factor in the excessive-fines analysis requires the court to compare Kujak's fine with fines authorized[1] for the commission of other crimes in Minnesota. *Rewitzer*, 617 N.W.2d at 415. "If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Solem*, 463 U.S. at 291, 103 S.Ct. at 3010, 77 L.Ed.2d 637. The district court found that $100,000 was "not substantially higher than the fines authorized for similarly ranked crimes." We agree.

Under Minnesota's criminal code, all of the crimes more serious than Kujak's racketeering offense are severity level IX or X crimes—primarily types of murder that call for imprisonment without the option of a fine. *See* Minn. Sent. Guidelines V. The highest potential fines attach to severity level VIII crimes, the severity level assigned to Kujak's crime. Two of those, controlled-substance crime in the first degree and importing controlled substances

1. Kujak urges the court to consider Minnesota Sentencing Guidelines Commission data showing that, in 1998, the 22 RICO offenders received no fines. The *Rewitzer* court footnoted such statistics for felony-level drug offenses. *State v. Rewitzer*, 617 N.W.2d 407, 415 n. 6 (Minn.2000). These statistics alone do not control our decision, however, and without a factual context for them, they are unpersuasive.

across state borders, have the highest potential fines of $1 million and $1.25 million, respectively. Minn.Stat. §§ 152.021, subd. 3 (controlled-substance crime in the first degree); .0261, subd. 3 (importing controlled substances across state borders) (2000). All other severity VIII crimes include fines ranging from $30,000 to $50,000.

Again, the Minnesota Legislature has declared by its criminal penalty provisions, that, short of murder, racketeering and higher-degree drug crimes are the most serious offenses. They are also crimes involving economic power. Kujak's plea to racketeering included two predicate crimes of importing controlled substances across borders. Alone, importing controlled substances across borders carries a $1.25 million maximum fine. Minn.Stat. § 152.0261, subd. 3. Therefore, the $100,000 fine imposed on Kujak is not grossly disproportionate to other offenses in Minnesota.

### C. Comparison To Other Jurisdictions

The third excessive-fines factor requires that the court consider fines imposed for commission of the same crime in other jurisdictions. *Rewitzer,* 617 N.W.2d at 413. The district court found that the fine imposed was within the range for a similar federal offense, and the parties agree. The parties offer that under federal law, Kujak would have been found guilty of either a level 32 or level 34 offense subjecting him to a fine of up to $175,000. Kujak also provides a survey of other states' maximum sentences for similar crimes falling within a $150,000–250,000 range.

■ While Kujak's $100,000 fine falls within or below the maximum fines in these other jurisdictions, he argues that indigent defendants may not be subject to a fine if unable to pay and not likely to become able to pay any fine. *See* U.S.S.G. §§ 5E1.2(a) (federal sentencing guidelines). In Minnesota, however, sentencing judges need not specifically find that a defendant has the ability to pay a fine before imposing the fine as part of a sentence. *Perkins v. State,* 559 N.W.2d 678, 693 (Minn.1997). Therefore, we conclude that the third factor also fails to show disproportionality.

Under the facts of this case, the district court did not impose an unconstitutionally excessive fine.

### III.

■ The district court's amended order required Kujak to pay "restitution" of $950 to the Southeastern Drug Task Force. A court may order as part of a criminal defendant's sentence that the defendant pay "the whole or any part of the disbursements of the prosecution," Minn. Stat. § 631.48 (2000). But directing payment of restitution to a drug task force is inappropriate. *State v. Murray,* 529 N.W.2d 453, 455–56 (Minn.App.1995) (citing several other similar cases). Here, however, the court originally ordered that Kujak pay $950 as "reimbursement" to the Southeastern Drug Task Force and specifically identified the reimbursement as "costs of prosecution." Such an order is clearly permissible under Minn.Stat. § 631.48. Although the record is devoid of any reconsideration of the $950 payment, the amended order characterized it as "restitution." Clearly, this was a clerical error. Minn. R. Crim .P. 27.03, subd. 8; *see State v. Walsh,* 456 N.W.2d 442, 443 (Minn.App.1990) (distinguishing clerical and judgmental errors). The amended order's characterization of the $950 as "restitution" was simply an inadvertent, technical error. Therefore, we affirm that portion of the district court's order.

## DECISION

The district court did not abuse its discretion by imposing an upward durational departure from the presumptive sentence, did not violate Kujak's constitutional rights by imposing a fine of $100,000, and did not err in ordering payment to the drug task force.

**Affirmed.**