**CITY OF NEW BRIGHTON,**
Respondent,

v.

**2000 FORD EXCURSION VIN# 1FMNU43S2YEA74156 Driven and Owned by Bruce Russell Barnes, Appellant,**

and

**Bruce Russell Barnes, Appellant,**

v.

**2000 Ford Excursion VIN# 1FMNU43S2YEA74156,**
Respondent.

No. C1–00–1064.

Court of Appeals of Minnesota.

Feb. 6, 2001.

Review Denied April 17, 2001.

Samuel A. McCloud, Kelly Vince Griffitts, Richard P. Ohlenberg, Shakopee, MN, (for appellant).

Thomas R. Hughes, Hughes & Costello, St. Paul, MN, (for respondent).

Considered and decided by CRIPPEN, Presiding Judge, RANDALL, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge *

This appeal is from a judgment ordering forfeiture of appellant's vehicle following a DWI violation. We affirm.

## FACTS

On October 19, 1999, appellant Bruce Barnes purchased a 2000 Ford Excursion worth approximately $40,000 and registered it in his name only. A portion of the money used to purchase the vehicle was withdrawn from an asset account Barnes and his wife shared, valued at $2,983,687.20.

After leaving the dealership, Barnes drove to a bar and consumed alcohol. He then drove home, parked the vehicle in his driveway, and went inside his house. Barnes returned to his vehicle later that evening with some compact discs to test the vehicle's stereo system. A neighbor called the police complaining of loud music. The police arrived at Barnes's home and found him sitting in the driver's seat of his vehicle listening to music. Barnes submitted to a blood alcohol test, which indicated an alcohol concentration of 0.14. Barnes was arrested for driving while intoxicated.[1]

Because Barnes had two prior impaired driving convictions or license revocations within five years of the October 19,1999, arrest, his vehicle was seized pursuant to Minn.Stat. § 169.1217, subd. 2 (1998). Subsequently, the state began forfeiture proceedings pursuant to Minn.Stat.

§ 169.1217, subd. 8 (1998). Pursuant to the statute's procedure for determination of a forfeiture, Barnes filed a civil complaint on November 10, alleging that the seizure of his vehicle violated double jeopardy and constituted an excessive fine. After Barnes was convicted of the DWI charge on January 18, 2000, the state filed a motion for summary judgment in the forfeiture proceeding. There was a motion hearing on March 17, 2000. On May 8, the district court issued an order granting the state's motion for summary judgment and directing that Barnes's vehicle be forfeited to the City of New Brighton. The district court amended this order on May 18, but the amendment did not affect the prior order regarding the forfeiture. Also on May 18, the district court issued another amended order dismissing Barnes's civil complaint. On June 12, 2000, the district court issued an order consolidating Barnes's civil claim and the state's forfeiture claim.

## ISSUES

I. Does vehicle forfeiture under Minn. Stat. § 169.1217 violate constitutional prohibitions against double jeopardy?

II. Does the forfeiture of appellant's vehicle under Minn.Stat. § 169.1217 violate constitutional prohibitions against excessive fines?

III. Is appellant's wife an owner of the forfeited vehicle within the meaning of Minn.Stat. § 169.1217?

IV. Did the district court err in granting the state's motion for summary judgment?

## ANALYSIS

"On appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Neither Barnes's arrest for DWI nor his conviction are at issue in this case.

fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990) (citation omitted). A statute's constitutionality is a question of law, which we review de novo. *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 337 (Minn. 1995). We exercise the power to declare a statute unconstitutional with extreme caution and only when absolutely necessary. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979). Absent good reason, this court will apply federal interpretations to a state constitutional provision with "almost identical language to the federal." *Hawes v. 1997 Jeep Wrangler*, 602 N.W.2d 874, 877 (Minn.App. 1999) (quotation omitted).

Minnesota's vehicle forfeiture statute provides for forfeiture of a vehicle used in the commission of a "designated offense." Minn.Stat. § 169.1217, subd. 6 (1998). "Designated offense" includes a DWI violation "within five years of two prior impaired driving convictions, or two prior license revocations, or a prior impaired driving conviction and a prior license revocation." *Id.*, subd. 1(c)(1)(i) (Supp.1999). After a person commits a designated offense, "[a]ll right, title, and interest in a vehicle subject to forfeiture * * * vests in the appropriate agency." *Id.*, subd. 3 (1998). A vehicle is subject to forfeiture only if "its owner knew or should have known of the unlawful use or intended use." *Id.*, subd. 7(d) (Supp.1999). Once a judicial determination of forfeiture has been made, the agency must either sell the vehicle and distribute the proceeds, or keep the vehicle for official use. *Id.*, subd. 9(1), (2) (Supp.1999).

## I. Double Jeopardy

 Appellant first argues that forfeiture of his Ford Excursion constitutes double jeopardy in violation of the United States and Minnesota Constitutions. The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Minnesota Constitution similarly provides that "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. "The Double Jeopardy Clauses of the United States and Minnesota Constitutions prohibit both multiple punishment and successive prosecution." *City of Pine Springs v. One 1992 Harley Davidson*, 555 N.W.2d 749, 750 (Minn.App.1996) (citation omitted); *see also Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (stating that "[t]he Clause protects only against the imposition of multiple *criminal* punishment for the same offense." (citations omitted)). "Thus, a criminal adjudication followed by a civil forfeiture, or vice versa, violates double jeopardy only if the forfeiture constitutes 'punishment.' " *One 1992 Harley Davidson*, 555 N.W.2d at 750.

The district court's determination that forfeiture of Barnes's vehicle would not violate double jeopardy is consistent with our prior holdings. *See Hawes*, 602 N.W.2d at 877–79; *Lukkason v. 1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803, 807–08 (Minn.App.1999), *review denied* (Minn. May 18, 1999); *One 1992 Harley Davidson*, 555 N.W.2d at 750–52; *City of New Hope v. 1986 Mazda 626*, 546 N.W.2d 300, 303–04 (Minn.App. 1996). In *Lukkason*, we stated that section 169.1217 passes the constitutional test for double jeopardy articulated in *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). *Lukkason*, 590 N.W.2d at 807.

 In *Ursery*, the Supreme Court articulated a two-step test for determining whether a civil forfeiture constitutes "punishment" for double jeopardy purposes. Under that test:

First, a court must examine the governing statute to determine whether the legislative body intended the forfeiture

proceedings to be criminal/punitive or civil/remedial. Next, the court must consider whether the party challenging the statute has shown by the clearest proof that the forfeiture is so punitive in fact that it may not legitimately be viewed as civil in nature.

*Hawes,* 602 N.W.2d at 878 (quotation and citations omitted). A civil in rem forfeiture "that has some punitive aspects will not necessarily violate double jeopardy provisions if it still serves important non-punitive goals." *Id.* (citing *Ursery,* 518 U.S. at 290, 116 S.Ct. at 2148).

■■■ Barnes does not dispute that the legislature designed forfeiture under Minn. Stat. § 169.1217 as a civil proceeding. *See 1986 Mazda 626,* 546 N.W.2d at 302 (assuming that forfeiture under section 169.1217 is civil proceeding). As we have recognized before:

> [T]he legislature intended vehicle forfeiture under Minn.Stat. § 169.1217 to serve the important, nonpunitive remedial goal of enhancing public safety by removing from repeat intoxicated drivers the instrumentality used to commit their violations.

*Hawes,* 602 N.W.2d at 878 (citing *Lukkason,* 590 N.W.2d at 806; *One 1992 Harley Davidson,* 555 N.W.2d at 751; *1986 Mazda 626,* 546 N.W.2d at 303–04). We presume that civil forfeitures do not violate double jeopardy. *Lukkason,* 590 N.W.2d at 807.

Given the "well-intended purpose" of the statute, the only question remaining under the test articulated in *Ursery* is

> whether the record contains the requisite clearest proof that the effect of the statute is so punitive that it negates the legislature's intent to establish a civil, remedial mechanism.

*Hawes,* 602 N.W.2d at 878 (quotation omitted). Barnes argues that the value of his vehicle is the clearest proof that the effect of section 169.1217 is so punitive that it can only be characterized as criminal. We disagree. To reiterate:

> The primary remedial purpose of protecting public safety is effectuated by vehicle forfeiture. The statute applies only where the driver of the vehicle has not heeded the warnings of previous sentences and license revocations. Only where those sanctions have failed is the instrumentality forfeited as another means toward the desired end of removing intoxicated drivers from public streets and highways.

*Hawes,* 602 N.W.2d at 878 (citing *1986 Mazda 626,* 546 N.W.2d at 304, quoting *Lukkason,* 590 N.W.2d at 806). In light of the broad purpose of Minn.Stat. § 169.1217, the seriousness of the risks associated with multiple DWI-related occurrences, and Barnes's disregard of warnings from previous instances of intoxicated driving, we conclude that forfeiture of his Ford Excursion does not constitute punishment for double jeopardy purposes. *See id.* ("A civil in rem forfeiture that has some punitive aspects will not necessarily violate double jeopardy provisions if it still serves important non-punitive goals." (citation omitted)).

Barnes argues that *Hawes* and *Lukkason* are not dispositive because the vehicles forfeited in those cases were of "relatively inexpensive values." In *Hawes,* we estimated the potential loss after forfeiture of his vehicle to be approximately $4,000. *Id.* at 878–79. In *Lukkason,* we found that the value of the vehicle forfeited was $11,534.92. *Lukkason,* 590 N.W.2d at 807. In both cases, we found that the forfeitures were not excessively punitive to render the cases criminal rather than civil. While Barnes's vehicle is of higher value than the vehicles cited above, the financial loss he has suffered is simply a permissible punitive aspect of an otherwise civil and remedial statute.

Because Barnes articulates no compelling reason to justify departing from this court's previous decisions that proceedings under section 169.1217 do not violate double jeopardy, we reject his double jeopardy claim.

## II. Excessive Fines

Barnes also argues that forfeiture of his Ford Excursion violates federal and state constitutional protections against excessive fines. "The punitive aspects of the primarily remedial vehicle forfeiture statute, however, place it within the purview of the Eight Amendment's Excessive Fines Clause." *Lukkason*, 590 N.W.2d at 807–08 (citation and footnote omitted); Minn. Const. art. I § 5. "A civil in rem forfeiture with dual remedial and punitive purposes may violate the Excessive Fines Clause even if it passes the constitutional test for double jeopardy." *Hawes*, 602 N.W.2d at 879 (citations omitted).

The Minnesota Supreme Court recently analyzed the state and federal excessive fines clauses. *State v. Rewitzer*, 617 N.W.2d 407, 412 (Minn.2000). Although *Rewitzer* involved criminal fines imposed on a person convicted of several crimes, we believe the supreme court's analysis of the excessive fines clause is also applicable to civil in rem forfeitures with both punitive and remedial purposes. *See Austin v. United States*, 509 U.S. 602, 620–22, 113 S.Ct. 2801, 2811–12, 125 L.Ed.2d 488 (1993) (although labeled in rem, civil forfeiture of property used to "facilitate" commission of drug crimes was partly punitive and thus subject to review under excessive fines clause); *Lukkason*, 590 N.W.2d at 808 ("[A] modern statutory forfeiture is a fine for Eighth Amendment purposes if it constitutes punishment even in part, regardless of whether the proceeding is styled in rem or in personam." (quotation omitted)).

In *Rewitzer*, the supreme court held that a district court "improperly imposed $273,600 in fines and surcharges on a defendant who pleaded guilty to one count each of controlled substance crimes in the fifth, third, and second degree." 617 N.W.2d at 408 (finding that fines and surcharges were 1,368 times greater than value of drugs involved and violated excessive fines clauses of United States and Minnesota Constitutions). The court relied on *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), for guidance on how to apply the excessive fines clause. *Rewitzer*, 617 N.W.2d at 412–14.

The facts of *Bajakajian* are as follows:

Hosep Bajakajian was leaving the United States from the Los Angeles International Airport when customs inspectors discovered that he was carrying $357,144 in currency. Bajakajian was charged with violating a federal statute requiring that persons transporting more than $10,000 in currency from the United States report that they are doing so. Federal statutes further provided that a court in imposing sentence on a person convicted of an offense in violation of [the statute] shall order that the person forfeit to the United States any property, real or personal, involved in such an offense.

*Rewitzer*, 617 N.W.2d at 413 (quotation and citations omitted). A federal grand jury later indicted Bajakajian on a separate count seeking forfeiture of the $357,144 seized from him. *Id.*

A district court and the Ninth Circuit Court of Appeals found that in light of the offense committed, full forfeiture would be too harsh. The United States Supreme Court granted certiorari and found that full forfeiture would violate the excessive fines clause. *Bajakajian*, 524 U.S. at 337, 118 S.Ct. at 2038. In reaching its decision, the Supreme Court formulated a standard for evaluating the constitutionality of a fine under the excessive fines clause. *See id.* at 336, 118 S.Ct. at 2037. "Specifically, the Court adopted the standard of gross disproportionality as articulated in *Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and held that a fine is unconstitutionally excessive if it is grossly disproportional to the gravity of the offense." *Rewitzer*, 617 N.W.2d at 413 (citation omitted). Under *Solem*, there are three factors to consider in determining proportionality:

(1) the gravity of the offense and the harshness of the penalty,

(2) comparison of the contested fine with fines imposed for the commission of other crimes in the same jurisdiction, and

(3) comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions.

*Id.* (citation omitted). The Minnesota Supreme Court has adopted this test to determine whether a fine violates the excessive fines clause. *Id.* at 414.

■ Appellant contends the forfeiture of his vehicle was grossly disproportional to the gravity of his offense. We must examine the *Solem* factors to determine the validity of his contention. "The first *Solem* factor compares the gravity of the offense with the severity of the fine." *Id.* The district court found that Barnes, a "repeat and unreconstructed drunk driver," is exactly the type of driver the vehicle forfeiture law was designed for. We agree. In adopting the vehicle forfeiture statute

> the legislature was concerned with the well-documented dangers of intoxicated drivers on streets and highways and the particularly troubling problem of multiple DWI offenders * * * who continue to expose the public to these dangers.

*Lukkason,* 590 N.W.2d at 808. In view of the "seriousness of the risks associated with multiple DWI-related occurrences," we conclude that the perceived harshness of the forfeiture of Barnes's vehicle does not exceed the gravity of Barnes's third DWI offense within five years.

The second *Solem* factor compares the contested fine, or forfeiture, with fines imposed for the commission of other crimes in Minnesota. *Rewitzer,* 617 N.W.2d at 414. Appellant pleaded guilty to a gross misdemeanor DWI. The maximum fine for a gross misdemeanor in Minnesota is $3,000. Minn.Stat. § 609.02, subd. 4 (2000). Felonies in Minnesota also have maximum fines. *See, e.g.,* Minn.Stat.

§ 609.245, subds. 1, 2 (2000) (listing maximum fines for aggravated robbery: $35,000 for first degree, $30,000 for second degree); 609.582, subds. 1, 2, 3 (2000) (listing maximum fines for felony burglary: $35,000 for first degree, $20,000 for second degree, $10,000 for third degree). The maximum fine for criminal vehicular homicide is $20,000. Minn.Stat. § 609.21, subd. 1 (2000). Therefore, the value of the vehicle forfeited from Barnes is higher than the fines imposed for many other offenses committed in Minnesota. But, a forfeiture is not excessive merely because the value of Barnes's car is higher than the maximum fines he might receive for committing similarly classified offenses. Under prior cases, forfeitures have not been deemed excessive simply because the value of the car forfeited was higher than the fines authorized for similarly ranked offenses. For example, in *Lukkason,* another DWI forfeiture case, the value of the vehicle forfeited was $11,534.92, an amount substantially higher than the maximum fine for a gross misdemeanor DWI. 590 N.W.2d at 807–08 (finding forfeiture constitutional because the value of the vehicle was not grossly disproportional to the gravity of the offense).

"The third and final *Solem* factor compares the contested fine with fines imposed for the same crimes in other jurisdictions." *Rewitzer,* 617 N.W.2d at 415. In Michigan, a person's vehicle may be forfeited if he or she operates the vehicle while "under the influence of intoxicating liquor." Mich. Comp.Laws Ann. § 257.625n(1)(a) (West 2000). In Tennessee, "[t]he vehicle used in the commission of a person's second or subsequent" offense of driving while under the influence of alcohol is "subject to seizure and forfeiture." Tenn.Code Ann. § 55–10–403(k)(1)(3) (1998). Similarly, in Oregon

> [a] motor vehicle may be seized and forfeited if the person operating the vehicle is arrested or issued a citation for driving while under the influence of intoxicants * * * and the person, within

three years prior to the arrest or issuance of the citation, has been convicted of * * *:

(a) Driving while under the influence of intoxicants[.]

Or.Rev.Stat. § 809.730(1)(a) (1999). In North Dakota, a motor vehicle may be forfeited if a person drives under the influence of alcohol and has been convicted of driving under the influence of alcohol "within five years preceding the violation." N.D.Cent.Code § 39–08–01.3 (1999). In Montana

[o]n the third or subsequent conviction of [driving under the influence of alcohol], the court * * * shall order the motor vehicle owned and operated by the person at the time of the offense to be seized and subjected to the [forfeiture] procedure provided [by statute].

Mont.Code Ann. § 61–8–733(1) (1999). Finally, in South Carolina

[i]n addition to the penalties for a person convicted of a * * * third or subsequent violation within the last ten years of operating a motor vehicle while under the influence of intoxicating liquor * * * the person must have the motor vehicle he drove during [the] offense forfeited[.]

S.C.Code Ann. § 56–5–6240(A) (West Supp.2000).

In examining the vehicle forfeiture statutes of other states, we have determined that many other states, in addition to Minnesota, subject a person's vehicle to forfeiture when such person has been convicted of several impaired driving offenses. The statutes from the other jurisdictions mentioned above do not place a monetary limit on the value of a vehicle that may be forfeited.

Based on our analysis of the *Solem* factors, we conclude that the forfeiture of Barnes's vehicle was not "disproportionately harsh" when compared with

(1) the gravity of his offense[], (2) the fines that can be imposed for other same-level offenses in Minnesota, and

(3) the [penalties] imposed for the same [proceedings] in other jurisdictions.

*Rewitzer*, 617 N.W.2d at 415. Therefore, we find Barnes's excessive fines claim to be without merit.

### III.

■ Barnes argues that because his wife contributed money toward the purchase of the Ford Excursion, she is an owner, making forfeiture of the vehicle improper. "A motor vehicle is subject to forfeiture under this section only if its owner knew or should have known of the unlawful use or intended use." Minn.Stat. § 169.1217, subd. 7(d) (Supp.1999). " 'Owner' means the registered owner of the motor vehicle according to records of the department of public safety * * *." Minn.Stat. § 169.1217, subd. 1(e) (Supp. 1999). Here, the vehicle was registered in Barnes's name, not his wife's name.

Barnes cites *Rife v. One 1987 Chevrolet Cavalier*, to support the proposition that his wife is an owner of the Ford Excursion because the vehicle was purchased with funds from an asset account to which she contributed. *Rife v. One 1987 Chevrolet Cavalier*, 485 N.W.2d 318, 321–22 (Minn. App.1992) (finding that even though car registered in father's name, evidence that seized car was owned, operated, and paid for with daughter's money was sufficient to establish that car was owned by daughter, not father), *review denied* (Minn. June 30, 1992). Here, there is no evidence that the Ford Excursion was owned and operated by Barnes's wife. In fact, his wife testified that she drives her own BMW. In addition, even if Barnes's wife may have contributed substantially to the bank account from which the vehicle was purchased, the money was not exclusively her own since both were signatories on the account.

Furthermore, *Rife* involves Minn.Stat. § 609.531, a different forfeiture statute than the one involved in this case. The statute analyzed in *Rife*

designates the registered owner only as the "alleged owner" for purposes of for-

feiture proceedings. The legislature's use of the word "alleged" indicates that ownership is not uncontrovertible, and the reference coincides with decisions for other purposes that registration is only a prima facie indication of title. 485 N.W.2d at 321 (citation omitted). Minn.Stat. § 169.1217 (Supp.1999), however, defines "owner" as the registered owner, and makes no mention of "alleged owners."

Because appellant was the owner of the vehicle and knew of the unlawful use, his vehicle was properly subject to forfeiture under section 169.1217.

### IV.

█ Finally, Barnes argues that summary judgment in favor of the City of New Brighton was improper because there was a genuine issue of material fact regarding who owned the Ford Excursion. However, as mentioned above, the statute at issue defines an "owner" as the registered owner of a vehicle. Minn.Stat. § 169.1217, subd. 1(e) (Supp.1999). There is no dispute that Barnes was the registered owner of the vehicle. "Once a court determines that the agency seeking forfeiture has met all the statutory requirements, an order for forfeiture is mandatory." *Hawes,* 602 N.W.2d at 880 (citation omitted).

Under the terms of the statute, a motor vehicle used to commit a designated offense is subject to forfeiture if the driver is convicted of the offense and the owner knew of the intended use. Minn.Stat. § 169.1217, subd. 7(a), (d) (Supp.1999). There are no material issues of fact that the vehicle was owned by Barnes and was used by him in the commission of a designated offense.

### DECISION

We affirm the district court's determination that the civil forfeiture in this case does not constitute double jeopardy or violate the excessive fines clause. Because no genuine issues of material fact exist, we conclude that Barnes's Ford Excursion is subject to forfeiture as a matter of law.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. The question is close, but I conclude that the forfeiture of Barnes's car, on these facts, is in violation of the federal and state constitutional protections against excessive fines. *See* U.S. Const. Amend. VIII; *see also* Minn. Const. Art. I, § 5 (both stating "[e]xcessive bail shall not be required, *nor excessive fines imposed,* nor cruel and unusual punishment inflicted") (emphasis added).

The State of Minnesota faced the issue head on in *State v. Rewitzer,* 617 N.W.2d 407, 412 (Minn.2000). As the majority concedes, in *Rewitzer,* the Minnesota Supreme Court found that a district court "improperly imposed $273,600 in fines and surcharges on a defendant who pleaded guilty to one count each of controlled substance crimes in the fifth, third, and second degree * * *." *Id.* at 408 (finding that fines and surcharges were 1,368 times greater than value of drugs involved and violated excessive fines clauses of United States and Minnesota Constitutions). *Rewitzer* was a *felony* case in which the fine was excessive. Here we are dealing with a gross misdemeanor traffic offense. The *Rewitzer* court relied on *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), for guidance on how to apply the excessive fines clause. *Rewitzer,* 617 N.W.2d at 412–13. *Bajakajian* was also a felony case where the forfeiture of $357,144 was found to be unconstitutionally excessive, based on the gravity of the offense compared to the amount of forfeiture. Neither *Rewitzer* nor *Bajakajian* came up with a "bright line," but did come up with a proportionality test, set out in *Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The *Solem* factors are

(1) the gravity of the offense and the harshness of the penalty,

(2) comparison of the contested fine with fines imposed for the commission of other crimes in the same jurisdiction, and

(3) comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions.

*Rewitzer,* 617 N.W.2d at 413 (citation omitted).

The forfeiture in this case miserably fails the first prong of *Solem.* The forfeiture also fails the second prong, the comparison of the punishment through forfeiture to fines imposed for other offenses in Minnesota.

The first prong under *Solem* is a common-sense test. It compares the gravity of the offense with the gravity of the punishment. If history teaches us anything, it is that when the Crown has a citizen in its grasp, the punishment has to be just. If it is too arbitrary, too capricious, and too punitive, and is laid on the citizen's head simply because "we have the power to do it," the government loses credibility, and when it loses credibility, it falls. People understand being punished and getting their just desserts. They do not understand getting kicked when they are down. When you kick people when they are down, they tend to get together in small groups, politely drive down to the nearest wharf, carefully park to avoid fire hydrants and no parking zones, and then start throwing tea and coffee into the harbor.

The majority opinion accurately sets out the facts. Barnes was sitting in his brand new car in his own driveway in his own yard listening to car music. The neighbors complained and the police came. If he had been charged with "disturbing the peace" or simply told, sensibly, to turn down the music, we wouldn't even have this case in front of us. Barnes was not convicted of drunken driving. Barnes was convicted of "drunken listening to music in his own car, in his own driveway, in his own yard." If he had not had the misfor-

tune to be playing the Rolling Stones rather than Mantovani or Neil Diamond, he would still have his $40,000 vehicle. This is not facetious. These are the true facts of record.

On these facts, forfeiting a $40,000 vehicle is "off the wall" grossly disproportionate. Neither *Rewitzer* nor *Bajakajian* nor *Solem* set an exact mathematical formula for computing fines, forfeitures, and surcharges to determine if they are proportionate, proportionate bordering on harsh, or grossly disproportionate. But it can be said unequivocally that those cases stand for the proposition that a line in the sand has to be drawn somewhere by the courts when viewing the state's treatment of its citizens. I can only conclude that here the state crossed the line.

The unabated arbitrariness of the forfeiture statute, with no controls present, is easily seen. You can have a poor person driving a $700 beater and he loses his car. You have a rich person driving a $40,000, or $60,000, or $100,000 luxury car and he commits the identical offense. He loses that car. You have a poor person who has saved all his life to finally buy a brand new car. He forfeits it. A rich person happens to be driving around in a $700 beater and commits the identical offense. He loses only that car. Normal criminal penalties, which include fines, are, at least, uniform. Misdemeanors are capped at $700, gross misdemeanors at $3,000, and felonies have limits in ascending order from least severe to more severe. For instance, the maximum fine for first degree aggravated robbery is $35,000 and $30,000 for second-degree aggravated robbery under Minn.Stat. § 609.245, subds. 1, 2 (1998); the maximum fine for first degree felony burglary is $35,000 under Minn.Stat. § 609.582, subds. 1 (1998); and the maximum fine for criminal vehicular homicide is $20,000 under Minn.Stat. § 609.21 (1998).

With a maximum fine for criminal vehicular homicide of $20,000, for a court to

impose a $40,000 forfeiture for the "criminal offense" of listening to a car stereo while *parked* in your own driveway with a blood alcohol reading just over .10, is punitively disproportionate to the offense. I agree that Barnes has a prior record. That is why he is in the fix that he is in. But his vehicle was not forfeited on those prior offenses. It was forfeited on this one.

The second issue is whether Barnes's spouse has standing to contest the forfeiture. I suggest that she does, that there is a fact question as to her partial ownership, and, consequently, this issue is not ripe for summary judgment. The record indicates the vehicle was purchased from an asset account to which Barnes's spouse had contributed. That raises the issue of whether she has an equitable and/or a legal interest.

The majority simply cites the statute, which indicates that the owner of a vehicle is the registered owner according to the records of the Department of Public Safety. We know the statute says that; but we also know that at times the statute is simply incorrect and the development of relevant facts is needed to sort out who truly owns the vehicle. For instance, in Minnesota, when you sell a car, you sign off on the title. There is a little receipt on the car title, which the buyer signs showing you have sold it and he has bought it. It is up to the buyer to register his new title, show proof of insurance, and pay the necessary registration fees. Some buyers don't do that right away. Some buyers don't ever do that. An innocent, unsuspecting, previous owner of a vehicle can get a letter from the Department of Public Safety months, or even a few years, after a bona fide sale stating that there are unpaid traffic and/or parking tickets against the vehicle and that a warrant will be issued for your (the so-called registered owner) arrest if you don't appear in court and pay the fines. You are entitled to go into court and show there was a bona fide sale and that the car is not yours.

The same is true when a buyer (who did not complete title transfer) later on is in a car accident and an injured plaintiff sues the driver and brings you in as the owner. Minnesota allows parties to sue the non-driving owner of vehicles under the Safety Responsibility Act. Minn.Stat. § 170.54. But an "owner" who is not a real owner because there was a bona fide sale, is entitled to go into court and attempt to prove that. *See Carousel Automobiles, Inc. v. Gherity,* 527 N.W.2d 813, 817 (Minn.1995) (stating avoidance of vicarious liability achieved with extrinsic evidence rebutting presumption of ownership created when party's name appears as owner on certificate of title). There is some evidence in this record that another person, Barnes's spouse, may have an equitable and/or legal ownership of the vehicle in question. Barnes and his spouse have the burden of proof. They may or may not be able to meet it, but they have raised a material fact issue that is in dispute and, thus, this issue is not ready for summary judgment. *See Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (stating summary judgment is appropriate where no genuine issue of material fact exists and one party is entitled to judgment as matter of law).

In sum, I respectfully dissent on two issues, the first being that under this narrow set of facts, the forfeiture of a $40,000 vehicle for this offense violates the federal and state constitutional protection against excessive fines. Second, even if the forfeiture stands up, Barnes has raised a legitimate fact issue as to ownership of the vehicle, and that should be remanded for a trial on the merits.