**Debra Jane MILLER, Respondent,**

v.

**ONE 2001 PONTIAC AZTEK, # GHS–186 VIN: 3G7DA03E41S500032, Defendant,**

**City of Bloomington, Appellant.**

No. C8–02–613.

Court of Appeals of Minnesota.

Dec. 17, 2002.

David Ornstein, Bloomington City Attorney, Sandra Henkels Johnson, Associate City Attorney, Bloomington, MN, for appellant.

Leonardo Castro, Fourth District Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for respondent.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, STONEBURNER, Judge, and WRIGHT, Judge.

**O P I N I O N**

WRIGHT, Judge.

After respondent Debra Miller was arrested twice in seven months for gross misdemeanor driving while impaired (DWI), appellant City of Bloomington (Bloomington) commenced forfeiture proceedings pursuant to Minn.Stat. § 169A.63 (2000) against her 2001 Pontiac Aztek. The district court found that forfeiture would be unconstitutionally excessive and ordered Bloomington to sell the vehicle and distribute all but $1,000 of the proceeds to Miller. Bloomington argues that the district court erred when it (1) found that the DWI forfeiture of Miller's vehicle violated the Excessive Fines Clause of the Eighth Amendment of the United States Constitution and Article I, Section 5 of the Minnesota Constitution; and (2) improperly applied the forfeiture statute. We reverse and remand.

**FACTS**

The facts of this case are undisputed. On June 6, 2001, Miller was arrested for gross misdemeanor driving while impaired in violation of Minn.Stat. §§ 169A.20, subd. 1(5), .25 (2000). At the time of the arrest, her blood alcohol concentration (BAC) was .29. Approximately seven months earlier, on November 16, 2000, Miller was arrested for gross misdemeanor DWI, having a BAC of .26. On January 25, 2001, Miller was convicted of the November 2000 offense and, on July 11, 2001, Miller was convicted of the June 2001 offense.

Because her first DWI conviction was less than ten years old, and because her BAC was above .20, there were two "aggravating factors" present when Miller committed the June 2001 offense, making it a first-degree DWI. *See* Minn.Stat. §§ 169A.25, subd. 1 (stating that person is guilty of first-degree DWI if "two or more

aggravating factors were present when the violation was committed"), .03, subd. 3 (2000) (aggravating factors include both impaired driving incident within last ten years and having BAC over .20). Miller's first-degree DWI constituted a "designated offense," which qualified Miller's vehicle for forfeiture. *See* Minn.Stat. §§ 169A.63, subds. 1(d)(1) (stating that "designated offense" includes a violation of section 169A.20, driving while impaired, under circumstances described in section 169A.25, first-degree driving while impaired), 2 (2000) (providing for seizure of motor vehicle involved in designated offense). Bloomington commenced forfeiture proceedings against Miller's vehicle.

Miller filed a demand for judicial determination regarding the forfeiture. Bloomington subsequently moved for summary judgment. The district court denied Bloomington's motion for summary judgment and ordered an evidentiary hearing.

At the evidentiary hearing, the district court examined. Miller's financial status. In September 2000, Miller was laid off her job. She used part of her severance package to purchase the 2001 Pontiac Aztek that she was driving when she was arrested in June 2001. At the time of the evidentiary hearing, Miller was still unemployed. She was receiving unemployment benefits, which were used to pay living expenses. The district court found that Miller had "little or no assets," had credit card debt of approximately $2,000, and was indebted to an attorney who represented her in a recent marital dissolution action.

On March 8, 2002, the district court issued an order concluding that the vehicle forfeiture would be "unconstitutionally excessive" because of its impact on Miller. The district court also found that Miller

> has suffered substantially due to her conviction i.e. jail, and is presently indigent with little or no savings and her only asset is the 2001 Pontiac Aztek, which the City of Bloomington seeks to have forfeited.

The district court concluded that "the forfeiture of her vehicle will produce a disparate result for [Miller] and it is inequitable to her." The district court ordered that the vehicle be sold, that Bloomington waive storage fees, and that all the proceeds of the sale above $1,000 be distributed to Miller. This appeal followed.

## ISSUES

I. Is the forfeiture of Miller's vehicle an unconstitutionally excessive fine under the Eighth Amendment of the United States Constitution and Article I, § 5 of the Minnesota Constitution?

II. Did the district court err by ordering Bloomington to distribute all but $1,000 of the proceeds of the forfeited vehicle sale to Miller?

## ANALYSIS

### I.

The constitutionality of a statute is a question of law that this court reviews de novo. *State v. Rewitzer*, 617 N.W.2d 407, 412 (Minn.2000). "We exercise the power to declare a statute unconstitutional with extreme caution and only when absolutely necessary." *City of New Brighton v. 2000 Ford Excursion*, 622 N.W.2d 364, 368 (Minn.App.2001) (citation omitted), *review denied* (Minn. Apr. 17, 2001). A person challenging the constitutionality of a statute must overcome every presumption in favor of constitutionality. *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979). "Absent good reason, we will apply federal interpretations to a state constitutional provision with 'almost identical' language to the federal." *Hawes v. 1997 Jeep Wrangler*, 602 N.W.2d 874, 877 (Minn.App.1999) (quotation omitted).

When a DWI offender has a BAC of more than .20 and has a prior DWI conviction within the past ten years, the offender's vehicle is subject to forfeiture pursuant to Minn.Stat. § 169A.63, subd. 6 (2000). If the district court finds that a vehicle is subject to forfeiture, the vehicle must be sold or kept for official use by the authority seizing the vehicle. *Id.*, subd. 10(a) (2000).

▉ "The punitive aspects of the primarily remedial vehicle forfeiture statute * * * place it within the purview of the Eighth Amendment's Excessive Fines Clause." *Lukkason v. 1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803, 807–08 (Minn.App.1999) (citation and footnote omitted), *review denied* (Minn. May 18, 1999); *see New Brighton*, 622 N.W.2d at 370; *see also* U.S. Const. amend. VIII. The Excessive Fines Clause's counterpart in the Minnesota Constitution is identical. Minn. Const. art. I, § 5. In cases involving DWI-related vehicle forfeiture, we apply the analytical framework used by the Minnesota Supreme Court in *Rewitzer* to analyze the federal and state excessive fines clauses. *New Brighton*, 622 N.W.2d at 370 (stating that "we believe the supreme court's analysis of the excessive fines clause is also applicable to civil in rem forfeitures with both punitive and remedial purposes"). In *Rewitzer*, the supreme court adopted the standard of "gross disproportionality," as articulated in *Solem v. Helm*, 463 U.S. 277, 288, 103 S.Ct. 3001, 3008–09, 77 L.Ed.2d 637 (1983), and found a fine of $273,600 for controlled substance violations to be unconstitutional. *Rewitzer*, 617 N.W.2d at 413–15.[1] To determine whether a DWI forfeiture is grossly disproportional under *Solem*, we examine

(1) the gravity of the offense and the harshness of the penalty; (2)[a] comparison of the contested fine with fines imposed for the commission of other crimes in the same jurisdiction; and (3)[a] comparison of the contested fine with fines imposed for commission of the same crime in other jurisdictions.

*New Brighton*, 622 N.W.2d at 370–71.

▉ Bloomington argues that the forfeiture of Miller's vehicle was not, as the district court found, an unconstitutionally excessive fine. Although the district court examined only the first *Solem* factor, we will address all three.

### A. Gravity of offense and harshness of penalty

Miller was arrested for gross misdemeanor DWI, just six months after her conviction for a similar offense. At both arrests, her BAC was measured at well above .20. The dangerousness of this conduct provides the type of gravity the forfeiture statute was intended to address. In *New Brighton*, the DWI offender had two prior DWI offenses when police arrested him for his third within five years. *Id.* at 367. As a result, the City of New Brighton sought forfeiture of the offender's $40,000 Ford Excursion. *Id.* This court agreed with the district court's assessment that the offender was a "repeat and unreconstructed drunk driver," and was "exactly the type of driver the vehicle forfeiture law was designed for." *Id.* at 371. Here, the gravity of Miller's offense was at least as great, if not greater, in light of the accumulation of two gross-

---

1. The *Rewitzer* court based its use of the gross disproportionality standard on the United States Supreme Court's decision in *United States v. Bajakajian*, 524 U.S. 321, 344, 118 S.Ct. 2028, 2041, 141 L.Ed.2d 314 (1998), where the seizure of $357,144 was held to be an unconstitutionally excessive penalty for the crime of failing to report exported currency in excess of $10,000. *Rewitzer*, 617 N.W.2d at 413–15.

misdemeanor DWI convictions within little more than a six-month period.

■ As to the harshness of the penalty, the central issue is whether the district court should have examined Miller's financial situation in determining whether forfeiture is excessive. Miller argues that there are no clear procedures for determining the harshness of a penalty. She also argues that in applying the first factor of the *Solem* test, the impact of the forfeiture on the vehicle's owner must be considered. Both Miller and the district court attempt to distinguish this case from *New Brighton,* where the offender was a millionaire. *See id.* at 367. Bloomington argues that the district court's examination of Miller's financial circumstances was improper. We agree.

A careful examination of *Solem* and *Bajakajian* leads us to conclude that the district court erred in assessing Miller's financial situation when applying the first factor of *Solem's* test for gross disproportionality. The supreme court in *Solem* clearly articulated that "[w]hen sentences are reviewed under the Eighth Amendment, courts should be guided by *objective* factors that our cases have recognized." *Solem,* 463 U.S. at 290, 103 S.Ct. at 3010 (emphasis added); *see also Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980) (stating that "Eighth Amendment judgments * * *

should be informed by objective factors to the maximum possible extent" (quoting *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion))); *United States v. 817 N.E. 29th Drive, Wilton Manors, Florida,* 175 F.3d 1304, 1311 (11th Cir.1999) (footnote omitted) (stating that "excessiveness is determined in relation to the characteristics of the offense, not in relation to the characteristics of the offender").

Although *Solem* addressed a life sentence, and not a fine or vehicle forfeiture, this language directs courts to conduct an objective evaluation of the harshness of the penalty, not a subjective evaluation of the individual circumstances of the person affected by it. We must, therefore, determine whether it is excessively harsh to remove the instrumentality of the offense from the offender. Our review of Eighth Amendment caselaw reveals no requirement that a court consider an offender's unique, individual circumstances in determining how a penalty impacts that offender.[2] Nor does our review reveal any precedent for doing so. In *Bajakajian,* a forfeiture case, the supreme court performed its analysis without considering the offender's individual financial circumstances. *Bajakajian,* 524 U.S. at 340, n. 15, 118 S.Ct. at 2039 n. 15 (offender's wealth neither argued before nor decided by trial court). Likewise, the Eighth

---

**2.** Unlike the DWI-related forfeiture statute, the statutes providing for the application of fines and restitution permit a subjective examination of an offender's financial condition when fines and restitution are ordered. *See* Minn.Stat. §§ 609.101, subd. 5(b) (stating if court finds defendant qualifies for public defender services, is indigent or immediate payment of the fine would create undue hardship, court may reduce minimum fine); 611.A.045, subd. 1(a)(2) (2000) (requiring a court to consider "the income, resources, and obligations of the defendant" when determining whether to award restitution and

setting the amount). The forfeiture statute does not contain similar language authorizing a subjective examination of the individual financial circumstances of the owner of the vehicle to be forfeited. In addition, although the *Rewitzer* court analyzed the offender's fine under both Minn.Stat. § 609.101 and the Eighth Amendment, the two analyses were performed separately, and only the latter applies here. *Rewitzer,* 617 N.W.2d at 411–15; *see also 817 N.E. 29th Drive,* 175 F.3d at 1311 n. 12 (noting that under federal law, an offender's characteristics may be used to determine an appropriate fine).

Amendment analysis in *Rewitzer* employed objective factors without consideration of individual financial circumstances. *Solem, Bajakajian,* and *Rewitzer* lead us to conclude that a district court must examine harshness objectively and refrain from analyzing the effect of a penalty based on an individual's particular circumstances.[3]

We conclude that examining Miller's particular financial circumstances was error. When we objectively evaluate the harshness of the penalty in Miller's case as required by *Solem,* we conclude that the forfeiture of a $16,000 vehicle, the instrumentality of the offense, is not excessively harsh in light of the gravity of two gross misdemeanor DWI convictions.

### B. Minnesota fines

We next compare the contested forfeiture with fines imposed for other crimes in Minnesota. *New Brighton,* 622 N.W.2d at 371. Like the appellant in *New Brighton,* Miller in this case was convicted of a gross misdemeanor, for which the maximum fine is $3,000. Minn.Stat. § 609.02, subd. 4 (2000); *see New Brighton,* 622 N.W.2d at 371. In *New Brighton,* we held that

> a forfeiture is not excessive merely because the value of [the DWI offender's] car is higher than the maximum fines he might receive for committing similarly classified offenses.

*Id.* (involving forfeiture of $40,000 vehicle). Similarly, in *Lukkason,* we held that the forfeiture of a vehicle worth $11,534.92 was not excessive in light of the gross misdemeanor that triggered the forfeiture. 590 N.W.2d at 807–08. Because the value of Miller's vehicle is not sufficiently distin-

guishable from the vehicles in these cases, we conclude that forfeiture of a $16,000 vehicle is not excessive when compared to the maximum fine possible for a gross misdemeanor.

### C. Forfeitures in other jurisdictions

Finally, the third *Solem* factor requires a comparison of the contested forfeiture with the forfeitures imposed for the same crime in other jurisdictions. Several other jurisdictions have comparable forfeiture laws. *See, e.g.,* Cal. Veh.Code § 23596 (West 2000) (forfeiture permitted after third or subsequent driving under the influence conviction within seven years); Mich. Comp. Laws Ann. § 257.625n(1)(a) (West 2001) (providing that vehicle may be forfeited if offender has two DWI offenses in seven years or three in ten years); N.D. Cent.Code § 39–08–01.3 (Supp.2001) (permitting forfeiture when offender has two or more convictions for driving under the influence of alcohol within five years); Wis. Stat. § 346.65(6)(a)(1) (West Supp. 2001) (permitting forfeiture of vehicle upon third alcohol-related driving offense). Minnesota's vehicle forfeiture statute is very similar to other jurisdictions in its application to repeat DWI offenders.

Based on the application of the *Solem* factors to this case, we conclude that the forfeiture of Miller's vehicle was not unconstitutionally excessive.

### II.

 Bloomington also argues that the relief fashioned by the district court was error because it was contrary to the forfeiture statute. We agree. The district

---

**3.** In addition to *New Brighton,* this court in other cases has not looked at the individual impact of the forfeiture when upholding the constitutionality of vehicle forfeitures challenged under the Excessive Fines Clause. *See, e.g., Lukkason,* 590 N.W.2d at 808 (hold-

ing forfeiture of $11,500 vehicle after third DWI offense in ten years was constitutional); *1997 Jeep Wrangler,* 602 N.W.2d at 880 (holding forfeiture of vehicle subject to $12,000 loan, after third DWI, was constitutional).

court ordered Bloomington to sell the vehicle and distribute all but $1,000 of the proceeds to Miller. The district court's order results in a de facto forfeiture that is without any legal authority. Application of a statute to the undisputed facts of a case involves a question of law, warranting de novo review. *O'Malley v. Ulland Bros.,* 549 N.W.2d 889, 892 (Minn.1996).

If a person commits a DWI offense for which a vehicle is subject to forfeiture, "[a]ll right, title, and interest in a vehicle subject to forfeiture * * * vests in the appropriate agency." Minn.Stat. § 169A.63, subd. 3 (2000). If the district court finds that the vehicle is subject to forfeiture, the vehicle must be sold or kept for official use. *Id.* subd. 10(a) (2000). After a vehicle has been sold, the proceeds must be distributed in accordance with the statutory scheme in Minn.Stat. § 169A.63, subd. 10(b). Minnesota's statutory scheme does not provide for distribution of the proceeds to the vehicle's previous owner. The forfeiture statute provides, in pertinent part:

> The proceeds from the sale of forfeited vehicles * * * *must* be forwarded to the treasury of the political subdivision that employs the appropriate agency responsible for the forfeiture * * *. If the appropriate agency is an agency of state

government, the net proceeds *must* be forwarded to the state treasury * * *.

Minn.Stat. § 169A.63, subd. 10(b) (emphasis added).

In light of the explicit language of the statute, there is no legal authority supporting the district court's de facto forfeiture order requiring distribution of the proceeds from the sale of the vehicle to the DWI offender. The district court, therefore, erred.

## DECISION

The forfeiture of Miller's vehicle was not unconstitutionally excessive. The district court erred by ordering Bloomington to distribute to Miller proceeds of the sale of her forfeited vehicle. We reverse and remand to the district court, with instructions to order Miller's vehicle to be forfeited pursuant to Minn.Stat. § 169A.63 (2000).

**Reversed and remanded.**