STATE of Minnesota, Respondent,

v.

Gary Allen KELLY, Petitioner, Appellant.

No. C5–92–1537, C7–92–1538.

Supreme Court of Minnesota.

June 30, 1994.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Linda M. Freyer, Asst. County Atty., Minneapolis, for respondent.

## OPINION

SIMONETT, Justice.

This appeal raises the same RICO issues as in *State v. Trong Kim Huynh,* 519 N.W.2d 191 (Minn.1994), also decided today. In this case, we hold that the evidence is insufficient to show defendant was associated with an "enterprise" as that term is used in Minnesota's Racketeering Influenced and Corrupt Organizations Act. We therefore reverse the racketeering conviction.

Defendant-appellant Gary Allen Kelly and four codefendants were charged with assorted prostitution-related crimes, plus racketeering. The jury found defendant guilty of one count of soliciting prostitution,[1] five counts of promoting prostitution,[2] five counts of receiving profits derived from prostitution,[3] and one count of

---

1. Minn.Stat. § 609.322, subd. 2(1) (1990) (soliciting or inducing a person age 16 to 18 to practice prostitution).

2. One count was for promoting prostitution in violation of Minn.Stat. § 609.322, subd. 1a(4)(a) (1990); and four counts were for promoting

prostitution in violation of Minn.Stat. § 609.322, subd. 2(4)(a) (1990).

3. Four counts were for violation of Minn.Stat. § 609.323, subd. 2 (1990) (receiving profit from the promotion of prostitution of persons age 16 to 18); the fifth count was for violation of Minn.

racketeering.[4] Defendant Kelly subsequently pled guilty to an additional count of soliciting prostitution. The trial court sentenced defendant to concurrent terms of imprisonment, ranging from a year and a day to 57 months, for the two counts of soliciting and five counts of promoting prostitution (the judge ruled that the convictions for receiving profits from prostitution merged with the soliciting and promoting offenses). The court added a concurrent 153 months in prison for the racketeering conviction.

The court of appeals affirmed the racketeering conviction (the only conviction defendant challenged), but remanded for resentencing. *State v. Kelly*, 504 N.W.2d 513 (Minn.App.1993). We granted defendant's petition for further review, where again defendant contends he did not participate in an "enterprise" and disputes the sentencing.

The State's case consisted primarily of the testimony of seven juvenile girls who testified they either engaged in prostitution for defendant Kelly or were able to tell about defendant's prostitution activities. Two of the codefendants, having negotiated guilty pleas, testified for the defense. Defendant did not testify.

The first young woman to testify was I.B., and her story provides a good overview of defendant's activities. I.B. testified that in July 1989, at age 16, she and two friends ran away to Minneapolis. There, while waiting for a bus, they met codefendant James Patten, who introduced them to his uncle, defendant Kelly. The men offered to help the girls find a place to stay. The group went to an apartment where I.B. had consensual sex with Patten, and from there the group went to a motel. Patten told I.B. she had to sleep with some men to pay for the motel and food. When I.B. refused, defendant Kelly threatened and beat her, and she then had sex with the three Asian–American men who had driven the group to the motel.

Afterwards, defendant told I.B. she had done a good job and he was going to take her places the next day. He told her she had to prostitute herself to get new clothes and to keep a roof over her head. The next day defendant and Patten took I.B. to Cedar Square West apartments, where they went to various rooms and offered the tenants her services as a prostitute for $20. She spent about 2 hours having sex with men in various apartments, with defendant supplying the condoms. Later that day defendant took her to "some other places" for prostitution. For the next 3 to 5 days, I.B. stayed at the apartment of a friend of defendant, and prostituted herself there and at the same apartment complex as before. She testified defendant threatened to hurt her or someone in her family if she ever ran away.

Defendant then took I.B. to Chicago for 2 weeks, where again they went door to door selling sex in various apartment buildings. Defendant also had I.B. walk the streets. Eventually, I.B. contacted a family member and was able to return to Minneapolis. I.B. estimated that she performed two to three hundred acts of prostitution for Kelly in Chicago, four hundred in Minneapolis, and fifty for codefendant Patten in Minneapolis. She never received any money. On a given day, she testified, defendant would inject heroin into his arm about once every hour.

The other juveniles had somewhat similar stories to tell. D.L. testified that in January 1991, when she was 17, she worked for codefendant Herman Gordon, and then for codefendant DeAndre Suggs; that her friend, C.F., worked for codefendant Ronnie Nelson; and that S.W., another friend, worked for defendant Kelly. For about a week, they worked two Minneapolis apartment complexes, with defendant Kelly knocking on doors to specific apartments and asking the occupants if they wanted a girl for a specified price. Defendant had a "black book" with telephone numbers in it, which he would use to call Asian–American customers. After

---

Stat. § 609.323, subd. 1a (1990) (receiving profit from the promotion of prostitution of persons age 13 to 16).

4. The racketeering conviction was for violation of subdivision 1(1) of Minn.Stat. § 609.903 (1992) (a person is guilty of racketeering who "(1) is employed by or associated with an enterprise and intentionally conducts or participates in the affairs of the enterprise by participating in a pattern of criminal activity").

about a week, C.F. and S.W. left with defendant Kelly and codefendant Ronnie Nelson for Chicago. D.L. did not go along.

C.F., also 17 at the time, testified along similar lines. During the week after she arrived in Minneapolis, in January 1991, she went to the same apartments three or four times with two other juveniles and defendant Kelly. The other two pimps stayed in their car outside the apartments. Defendant would take the girls door-to-door, as described by the other witnesses. C.F. testified she was supposed to work for defendant Kelly but she decided instead to work for codefendant Nelson. After a week in Minneapolis, C.F. and S.W. went to Chicago with defendant Kelly and codefendant Nelson. C.F. stayed there for a week and a half to two weeks before returning to Minneapolis with Nelson. While in Chicago, defendant Kelly would take the girls to various apartment complexes, where they would have sex with Asian–American men.

A.D. worked for defendant Kelly in August 1990, when she was 17, first at the Cedar Square West apartments and then in Chicago for about a week and a half. She testified she performed five hundred to a thousand acts of prostitution, with all the money going to Kelly, who was spending it on heroin. Another juvenile, D.A., testified she met defendant Kelly in February 1991, when she was 17; that she performed two acts of prostitution for him, one at his apartment and the other at the Minneapolis apartment complex; and that she did not work for him again.

Finally, two other juveniles, who did not work for defendant Kelly but for his codefendants, also testified. The first juvenile, R.H., testified that Kelly called her from Chicago in late 1990 and wanted her to come to Chicago to prostitute, but she did not go. (This testimony provided the basis for the solicitation conviction.) The second juvenile, T.N., testified vaguely that at some time in 1991, at age 14, while she was working as a prostitute for codefendant Patten in Minne-

apolis and Chicago, S.W. was then working in Chicago for Kelly.

■ To sum up: From July 1989 through February 1991, a period of about 19 months, defendant Kelly solicited one juvenile for prostitution and promoted prostitution with five others. The five juveniles who worked for defendant did so at different periods of time, the times ranging from three or so weeks (I.B.) to a day or so (A.D.). Apparently, only with respect to I.B. did defendant use any physical force.

The dispositive issue here can be simply put: Was defendant employed by or associated with an "enterprise"? The answer, we conclude, is no.

Preliminarily, it is important to note what the State claims the "enterprise" to be. *See* note 5, *infra*. During the trial, the State appears to have taken the position that the enterprise could have been an "association-in-fact" consisting of defendant and either his fellow pimps or the juvenile prostitutes, or both. While it appears the codefendants traveled at times in the same circles, the record does not suggest that defendant and his codefendants were in any way organized as a group, nor does the State, on appeal, argue otherwise. Thus, if there is an "association-in-fact," it must consist of defendant Kelly and the juvenile prostitutes. Kelly alone, we should add, does not constitute an enterprise. Our RICO statute, unlike the federal Act, omits "individual" from its definition of an "enterprise."[5] Finally, we note that the prostitution-related offenses involved here are proper predicate criminal acts.

In *State v. Huynh, supra*, we held that an enterprise under our RICO statute is characterized by:

1) a common purpose among the individuals associated with the enterprise; where

---

5. An enterprise means "a sole proprietorship, partnership, corporation, trust, or other legal entity, or a union, governmental entity, association, or group of persons, associated in fact although not a legal entity, and includes illicit as well as legitimate enterprises." Minn.Stat.

§ 609.902, subd. 3 (1992). The word "individual" was omitted from the statutory definition in committee. *See* Minutes of Hearing on S.F. 483, Sen.Judic.Comm., Crim.Law Div., 76th Minn. Leg., March 31, 1989.

2) the organization is ongoing and continuing, with its members functioning under some sort of decisionmaking arrangement or structure; and where

3) the activities of the organization extend beyond the commission of the underlying criminal acts to either coordinate the underlying criminal acts into a pattern of criminal activity or to engage in other activities.

The first requirement is met. Defendant Kelly and the juveniles who worked for him had a common purpose, namely, to engage in prostitution activity.[6] The fact that defendant kept all the profit, while suggestive that the juveniles were in a sense victims, does not prevent the existence of an enterprise in this case. Nor does defendant contend otherwise.

It is doubtful, however, that the second requirement is met. An "ongoing" organization requires some continuity of structure and personnel. *Huynh, supra; see United States v. Kragness*, 830 F.2d 842, 856 (8th Cir.1987). Here continuity of personnel is missing. One of the juveniles would work for defendant for a few weeks or so, then leave, to be followed at some later time by another juvenile. Defendant Kelly never had more than one girl working for him at any one time (except possibly during one period of a week). We do not think this kind of episodic association is enough to supply the continuity of personnel required for an enterprise.

■ The State points to the ample evidence of defendant Kelly's direction and control of the prostitution activities. Kelly recruited the juveniles, helped find customers, provided prophylactics, kept a "black book" of patrons and pocketed the fees for services rendered. In effect, it seems to us, Kelly was the enterprise. But as we have noted, a lone individual (unless operating as a sole proprietorship) cannot be an enterprise for purposes of RICO. *See* note 5, *supra.* The State seeks to have the juvenile prostitutes considered members of an association-in-fact; but, in this case at least, their desultory

connection is insufficient for an organization that must be ongoing and continuing.

In any event, the third requirement for an enterprise is not met. There is no proof of an organization existing beyond the commission of the predicate criminal acts. Defendant Kelly, it is true, recruited each of his prostitutes, took her to customers in various places in Minneapolis and Chicago, managed her services, and took the money. All these activities, however, are inherent in the predicate criminal acts of soliciting prostitution, promoting prostitution, and receiving profit derived from prostitution. *See* notes 1–3, *supra.* There was no coordination of the predicate criminal acts into a "pattern," such as by organizing a house of prostitution or a prostitution ring or network. Neither was there any evidence that defendant had acquired property or other investments in connection with his prostitution activities.

What we have here is an individual who induces a young runaway juvenile to be a prostitute for a few weeks, after which another runaway juvenile is similarly engaged, all so that the individual can support a personal heroin habit. For this sordid conduct, defendant Kelly has been found guilty and is being punished. To superimpose a "racketeering" offense on this conduct only enhances the punishment defendant has already received. We do not have here the "organized crime" which invokes RICO.

Because the RICO conviction is reversed, the issue of the sentence to be imposed for the RICO offense is moot.

Reversed.

GARDEBRING, Justice (concurring in part, dissenting in part).

I concur in the result the court reaches today because I agree that the evidence in this case is insufficient to meet the test the court sets out for the existence of an "enterprise" under Minnesota's RICO statute. However, for the reasons discussed in my dissent in *State v. Huynh,* also released to-

---

6. It seems better to say defendant and his juvenile prostitutes were engaged in "prostitution activity" rather than in "the business of prostitution." For purpose of the crimes of solicitation,

promotion and receiving profits, Minn.Stat. § 609.321, subd. 2 (1992) defines "business of prostitution" as an arrangement of two or more persons *other than prostitutes and patrons.*

day, I respectfully dissent from the majority's formulation of that test. I would adopt the more stringent test found in *United States v. Kragness,* 830 F.2d 842, 855 (8th Cir.1987).

WAHL, Justice (concurring in part, dissenting in part).

I join in the concurrence in part and dissent in part of Justice GARDEBRING.