SCHELLHAS, Judge
Appellant challenges his convictions of, and sentences for, racketeering, controlled-substance crimes, and conspiracy to commit controlled-substance crimes, arguing that (1) the evidence is insufficient to sustain his convictions of racketeering and conspiracy to commit first-degree sale of a controlled substance; (2) the district court erroneously instructed the jury; (3) the prosecutor committed prejudicial misconduct; and (4) the district court made multiple sentencing errors. Appellant also filed a pro se supplemental brief in which he raised several arguments. We affirm appellant's convictions but reverse and remand for resentencing.
FACTS
In June 2015, respondent State of Minnesota charged appellant Erick Longo with the following 14 counts: two counts of racketeering; four counts of conspiracy to *604 commit first-degree controlled-substance crime; one count of conspiracy to commit second-degree controlled-substance crime; one count of first-degree controlled-substance crime; three counts of second-degree controlled-substance crime; one count of third-degree controlled-substance crime; one count of fourth-degree controlled-substance crime; and one count of fifth-degree controlled-substance crime.
At trial, the state presented evidence that between May 2014 and July 2015, confidential informants (CIs) purchased methamphetamine from Longo in multiple controlled buys conducted by law enforcement. As part of his drug operation, Longo used several individuals, including C.S., H.F., M.F., and B.W., as "runners" or "mules," who delivered methamphetamine for Longo and returned with the sale money. C.S. testified that as compensation for "being a runner," Longo paid him with money, methamphetamine, or "good graces," meaning that if he wanted to purchase methamphetamine for himself, he could buy it from Longo at a cheaper price. C.S. also testified that as a runner for Longo, he assisted Longo with various tasks, such as stealing a car stereo from an individual who owed Longo money, and facilitating an arson as retribution for drugs that were allegedly stolen from Longo.
C.S. testified that Longo referred to a specific portion of his residence as "The Crack Shack," where people purchased methamphetamine. Because Longo accepted property in exchange for methamphetamine, he sometimes referred to The Crack Shack as "The Crack Shack Pawnshop." C.S. testified that Longo "fronted" methamphetamine to individuals in exchange for property, which was used as collateral for drugs. These individuals brought items, "like, stolen car stereos to Longo," and Longo paid them in methamphetamine and wrote receipts for them. B.W. testified that Longo had several vehicles at his residence that he had obtained through "debts and collateral" for methamphetamine transactions. Longo posted ads for this property on "Craigslist and ... on his Facebook page."
The jury found Longo guilty of nine charges, including one count of racketeering, three counts of conspiracy to commit first-degree sale of methamphetamine, and five counts of sale or possession of methamphetamine. The district court denied Longo's motion for a new trial. Except in regard to the racketeering offense, which the court ranked as a severity-level nine, the court Hernandized all of Longo's sentences and imposed concurrent sentences for all offenses, for a total sentence of 189 months.
This appeal follows.
ISSUES
I. Is the evidence sufficient to sustain Longo's convictions of racketeering and conspiracy to commit *605 first-degree sale of a controlled substance?
II. Did the district court err when it instructed the jury on the racketeering charge?
III. Did the prosecutor commit prejudicial misconduct during closing arguments?
IV. Did the district court err in sentencing Longo?
V. Do any of the arguments raised in Longo's pro se supplemental brief have merit?
ANALYSIS
I. Sufficiency of the evidence
Longo argues that the evidence was insufficient to sustain his convictions of racketeering and conspiracy to commit first-degree sale of a controlled substance. When considering a claim of insufficient evidence, we conduct "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." Loving v. State , 891 N.W.2d 638, 643 (Minn. 2017) (quotation omitted). We assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." State v. Caldwell , 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted). A reviewing court will not disturb the verdict if the jury, "giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt ... could reasonably have found the defendant guilty of the charged offense." State v. Vang , 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted).
A. Racketeering
A person is guilty of racketeering if the person "participates in a pattern of criminal activity and knowingly invests any proceeds derived from that conduct, or any proceeds derived from the investment or use of those proceeds, in an enterprise or in real property." Minn. Stat. § 609.903, subd. 1(3) (2014). An "enterprise" is "a sole proprietorship, partnership, corporation, trust, or other legal entity, or a union, governmental entity, association, or group of persons, associated in fact although not a legal entity, and includes illicit as well as legitimate enterprises." Minn. Stat. § 609.902, subd. 3 (2014). The supreme court has determined that, for purposes of the racketeering statute, an "enterprise" is characterized by (1) a common purpose among its members, (2) an ongoing and continuing structure, and (3) activities that extend beyond the commission of the underlying criminal offenses. State v. Huynh , 519 N.W.2d 191, 196 (Minn. 1994). Proof of all three characteristics is necessary to ensure that criminal enterprises-the target of the Minnesota racketeer-influenced-and-corrupt-organizations act (RICO), Minn. Stat. §§ 609.901 -.12 (2014)-"are distinguished from individuals who associate for the commission of sporadic crime." Id. at 199 (quotation omitted).
Longo argues that the state failed to produce sufficient evidence of an enterprise because (1) there was "no 'common purpose' ... among individuals associated with [Longo's] so-called 'enterprise' "; and (2) the alleged enterprise lacked an ongoing organization that functioned as a continuing unit.
1. Common purpose
The supreme court in State v. Kelly acknowledged that Minnesota's RICO statute, unlike the federal statute, "omits 'individual' from its definition of an 'enterprise.' " 519 N.W.2d 202, 204 (Minn. 1994) (footnote omitted). Therefore, a "lone individual (unless operating as a sole proprietorship) cannot be an enterprise for purposes of RICO." Id. at 205.
Longo argues that the state characterized his "enterprise" as his thrift and pawnshop business, "not ... that the 'enterprise' was a narcotics enterprise." Citing Kelly , Longo contends that because he ran these businesses alone, the state failed to prove the existence of an enterprise. Longo argues that because "this was not an alleged narcotic-dealing enterprise," the state failed to show that a common purpose existed through Longo's operations of his thrift and pawnshop businesses.
Longo's arguments that the state's case was limited to the pawn and thrift shops *606 mischaracterize the state's case.[1] The amended complaint specifically alleged that between "May 1, 2014 and August 1, 2015, [Longo] committed various controlled substance crimes and invested the proceeds derived from [that] conduct into an enterprise identified as Longo's Dope House Auto Sales and Loan." And during closing arguments, the state emphasized that the crux of Longo's enterprise was the sale of methamphetamine.
In Kelly , the supreme court recognized that the defendant, and the juveniles who worked for him, shared a common purpose by engaging in criminal activity. Id. Here, the common purpose associated with Longo's enterprise was the sale of methamphetamine. The state presented evidence that Longo was involved in numerous methamphetamine transactions and the jury convicted Longo of five felony methamphetamine-related offenses. The state also presented evidence that Longo used his thrift shop as a means of supporting his drug trade by taking personal property, rather than cash, as payment for methamphetamine. Longo would then sell this property at his shop or online. Moreover, the record reflects that Longo used various individuals to assist him in his methamphetamine transactions and often compensated them with methamphetamine. We conclude that the evidence is sufficient to establish the common-purpose element.
2. Continuity of structure and personnel
Longo also contends that the state failed to prove the enterprise element because "the requirement of continuity and structure of personnel ... was missing." This element is satisfied "where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc, basis." Huynh , 519 N.W.2d at 199 (quotation omitted).
The record reflects that the first controlled buy occurred in May 2014, and the last controlled buy happened in July 2015. This 14-month period satisfies the "ongoing and continuing" requirement. Moreover, the record reflects a clear organizational structure, with Longo as the principal and C.S. as Longo's "right-hand man," acting as Longo's "runner" and assistant. And several other individuals, including H.F., M.F., and B.W., testified that they worked for Longo as "runners" or "mules," delivering methamphetamine for Longo and returning with the sale money. Similarly, J.B. testified that he did various jobs for Longo to help pay for methamphetamine that he and his girlfriend received. B.W. testified that Longo liked to "fashion himself after" Pablo Escobar and that he wanted to run Thief River Falls "like a cartel." Although Longo's scheme was not particularly sophisticated, viewing the evidence in the light most favorable to the conviction, the evidence is sufficient to support Longo's conviction of racketeering.
B. Conspiracy to Commit First-Degree Sale of a Controlled Substance
The jury found Longo guilty of conspiracy to commit first-degree controlled-substance crime in violation of Minn. Stat. § 152.021, subd. 1(1) (2014). This statute required the state to prove that Longo conspired to sell one or more *607 mixtures of a total weight of ten grams or more containing methamphetamine within a 90-day period. Id. A person is guilty of engaging in a conspiracy if that person "conspires with another to commit a crime and in furtherance of the conspiracy one or more of the parties does some overt act in furtherance of such conspiracy." Minn. Stat. § 609.175, subd. 2 (2014). "The elements of the underlying crime need not be proven to establish conspiracy since the crime itself need not be proven to prove conspiracy." State v. Tracy , 667 N.W.2d 141, 146 (Minn. App. 2003). But "both knowledge of an agreement and evidence of intent to commit the crime or act that is the object of the conspiracy" are required. State v. Kuhnau , 622 N.W.2d 552, 556 (Minn. 2001).
For the count of conspiracy to commit first-degree sale of a controlled substance, the complaint alleged that "between June 2, 2015 and July 28, 2015," Longo "conspired with" B.G., H.F., C.L., A.C., S.C., B.W., J.L., and V.L. "to sell one or more mixtures of a total weight of 10 grams or more containing methamphetamine." Longo argues that his conviction under this count must be reversed because the state (1) failed to prove an agreement or an overt act; and (2) the accomplice testimony was not corroborated.
1. Agreement or overt act
As long as the evidence objectively shows an agreement to commit a crime, the state need not prove the existence of a formal agreement. State v. Hatfield , 639 N.W.2d 372, 376 (Minn. 2002). And direct evidence of a conspiracy is not required if a conspiracy may be inferred from the circumstances. Id. at 377. If "several persons commit separate acts which form parts of a connected whole, an inference of conspiracy-that there was concert in both planning and execution-is permissible." State v. Burns , 215 Minn. 182, 189, 9 N.W.2d 518, 522 (1943).
Longo argues that the state "failed [to] prove any specific agreement or overt act during June 2 and July 28, 2015." We disagree. C.L. testified that he participated in a controlled buy in July 2015, by contacting Longo for the purpose of "acquiring an ounce of methamphetamine." According to C.L., he went to Longo's residence and "asked him if [he] could ... get an ounce of methamphetamines dropped off at [his] mailbox" and he would "have $2,400 waiting in the mailbox for him." This testimony establishes an agreement to commit first-degree sale of methamphetamine. The overt act in furtherance of the conspiracy was satisfied when Longo later provided C.L. with the ounce of methamphetamine. And the exact date of the conspiracy was established by Deputy Nelson, who testified that the controlled buy occurred on July 28, 2015. We conclude that the evidence is sufficient to establish an agreement and an overt act with respect to count 14 of the complaint.
2. Corroboration
Longo contends that the evidence is insufficient to sustain his conviction because the accomplice testimony was not corroborated. We disagree. Accomplice testimony is inherently suspect. State v. Jackson , 746 N.W.2d 894 (Minn. 2008). Accordingly, accomplice testimony is not sufficient to sustain a conviction, "unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." Minn. Stat. § 634.04 (2016). Corroborating evidence includes testimony of eyewitnesses and experts and may be circumstantial. State v. Pederson , 614 N.W.2d 724, 732 (Minn. 2000). "Corroborating evidence is sufficient if it restores confidence in the accomplice's testimony, confirming its truth and pointing *608 to the defendant's guilt in some substantial degree." State v. Ford , 539 N.W.2d 214, 225 (Minn. 1995) (quotation omitted).
Here, Deputy Nelson testified that on July 28, 2015, C.L., working as a CI, "arranged to purchase one ounce of methamphetamine from ... Longo." According to Deputy Nelson, the arrangement was made between C.L. and Longo that C.L. "would put the money in his ... mailbox, and ... Longo was to come there, take the money out of the mailbox, put the methamphetamine in the mailbox, and then leave." Deputy Nelson's testimony was consistent with C.L.'s testimony, and Deputy Nelson stated that he observed the transaction occur. We conclude that sufficient evidence supports Longo's conviction of conspiracy to commit first-degree sale of a controlled substance.
II. Jury instructions
Longo argues that, even if the evidence is sufficient to convict him of racketeering, he is entitled to a new trial because the district court's jury instructions failed to (A) define enterprise; and (B) properly instruct the jury regarding the pattern of criminal activity. But Longo concedes that he did not request the omitted instructions or otherwise object to the jury instructions at trial. "A defendant generally forfeits the right to contest jury instructions on appeal when the defendant fails to object at trial." State v. Davis , 864 N.W.2d 171, 176 (Minn. 2015). But we may review unobjected-to jury instructions in our discretion. See Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court ... on appeal even if it was not brought to the [district] court's attention.").
Under a plain-error analysis, Longo is required to establish (1) an error, (2) that is plain, and (3) that affects his substantial rights. State v. Watkins , 840 N.W.2d 21, 28 (Minn. 2013). If these three prongs are established, the reviewing court then assesses whether reversal is required to ensure "the fairness, integrity, or public reputation of judicial proceedings." State v. Scruggs , 822 N.W.2d 631, 642 (Minn. 2012) (quotation omitted).
Assuming, without deciding, that Longo can establish that the jury instructions were plainly erroneous, he is unable to establish prejudice. See State v. Griller , 583 N.W.2d 736, 741 (Minn. 1998) (stating that a plain error affects a defendant's substantial rights "if the error was prejudicial and affected the outcome of the case"). Longo was convicted of five non-conspiracy felony drug offenses. These offenses satisfy the statutory requirement that " 'a person participates in a pattern of criminal activity' when the person is a principal with respect to conduct constituting at least three criminal acts" and "two of the acts constitute felonies other than conspiracy." See Minn. Stat. § 609.902, subd. 5 (defining "participation in a pattern of criminal activity").
Moreover, Longo cannot establish that he was prejudiced by the district court's failure to provide the definition of enterprise because, despite Longo's argument to the contrary, the state's argument with respect to racketeering did not focus on Longo's pawnshop-it focused on his narcotics sales. The record reflects a plethora of evidence that the common purpose of Longo's scheme was the sale of methamphetamine. In addition, the record reflects that Longo's activities extended beyond the commission of the underlying criminal offenses; evidence was presented that Longo ran a pawnshop/thrift store with items he obtained in exchange for methamphetamine. He also ordered that J.H.'s family's barn be burned as retribution for failing to pay a drug debt, and *609 ordered that E.W.'s car be stolen so that it could be sold to satisfy E.W.'s drug debt. We therefore conclude that Longo is not entitled to a new trial based on the alleged erroneous jury instructions.
III. Prosecutorial misconduct
Next, Longo argues that the prosecutor committed misconduct during closing arguments by "express[ing] his personal opinion on [Longo's] guilt, the sufficiency of the evidence, the strength of the case, and whether accomplice testimony was corroborated." Longo, however, concedes that he did not object to the alleged prosecutorial misconduct. Under these circumstances, a modified plain-error test is applicable. State v. Carridine , 812 N.W.2d 130, 146 (Minn. 2012). To prevail, Longo must establish that there was an error and that the error is plain. See State v. Ramey , 721 N.W.2d 294, 302 (Minn. 2006). If Longo establishes plain error, the burden shifts to the state to show that the plain error did not affect his substantial rights. Id. "If all three prongs of the test are met, [this court] may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." State v. Peltier , 874 N.W.2d 792, 804 (Minn. 2016) (quotations omitted).
Longo argues that the prosecutor engaged in misconduct by using the phrase "I believe," and "the State believes" to express his personal opinion and "vouched for his evidence" during closing arguments. We agree. The prosecutor used the phrase "I think," or "I believe" at least a dozen times during closing arguments. The statement "the state believes" has been held to be plain error by the supreme court. State v. Swanson , 707 N.W.2d 645, 656 (Minn. 2006). The prosecutor's comments during closing arguments therefore constitute plain error.
We next consider whether the plain error affected Longo's substantial rights. In addressing this question, we consider (1) the strength of the state's evidence; (2) "the pervasiveness of the erroneous conduct"; and (3) whether the defendant "had an opportunity to rebut any improper remarks." Peltier , 874 N.W.2d at 805-06.
The record reflects that the state's evidence was very strong, particularly with respect to the controlled-substance crimes. Moreover, the pervasiveness of the misconduct does not weigh in favor of Longo. Although Longo points to at least a dozen times the prosecutor used the phrase "I think," or "I believe," during closing arguments, the record in this case is very large and the prosecutor's closing argument was lengthy. In addition, the frequency and context of the prosecutor's statements suggests "that they were perhaps more idle cliché than deliberate expression of personal opinion, and the absence of objection by the defense counsel who actually heard them adds to this impression." See State v. Prettyman , 293 Minn. 493, 495, 198 N.W.2d 156, 158 (1972) (concluding that although improper, the prosecutor's use of the phrase "I think" did not prejudice defendant). Finally, Longo had the opportunity to rebut the misconduct in his closing argument but did not. For these reasons, Longo is not entitled to a new trial.
IV. Sentencing
Longo challenges his sentence, arguing that (A) he is entitled to be resentenced under the Drug Sentencing Reform Act (DSRA); (B) the district court abused its discretion by ranking the racketeering offense at a severity-level nine; and (C) the district court erred by Hernandizing his sentence.
*610 A. Resentencing Under the DSRA
After the state charged Longo, but before he was convicted, the DSRA was signed into law, which, among other things, reduced the presumptive guidelines sentence for first-degree controlled-substance crimes and other drug-related crimes. 2016 Minn. Laws ch. 160, §§ 1-22, at 576-92. In State v. Kirby , the supreme court held that a defendant is required to be resentenced under the DSRA-amended sentencing grid "only if: (1) the Legislature made no statement that clearly establishes the Legislature's intent to abrogate the amelioration doctrine; (2) the amendment mitigated punishment; and (3) final judgment had not been entered as of the date the amendment took effect." 899 N.W.2d 485, 490 (Minn. 2017).
Longo argues, and the state concedes, that he is entitled to be resentenced under the DSRA. Longo is correct. The supreme court in Kirby concluded that, in the DSRA, "the Legislature did not intend to abrogate the amelioration doctrine." Id. at 491. Moreover, when Longo committed his drug-related crimes, the sentencing range for first-degree controlled-substance crime committed with a criminal-history score of six was 135-189 months, with a presumptive sentence of 158 months. Minn. Sent. Guidelines 4.A (2014 & Supp. 2015) (sentencing guidelines grid).
The DSRA reduced the presumptive sentencing range applicable to Longo to 107-150 months, with a presumptive sentence of 125 months. 2016 Minn. Laws ch. 160, § 18(b), at 591; see Minn. Sent. Guidelines 4.C (2016) (drug offender grid). Finally, Longo's case was not yet final on May 23, 2016, the date on which the DSRA became effective. See State v. Losh , 721 N.W.2d 886, 893-94 (Minn. 2006) (stating that a case is pending until the availability of direct appeal has been exhausted). All three factors necessary for resentencing under the DSRA therefore are satisfied. Accordingly, consistent with Kirby , Longo's sentence must be reversed and remanded for resentencing under the DSRA. See Massey v. State , 352 N.W.2d 487, 489 (Minn.App. 1984) (stating that district court is in best position to weigh various sentencing options), review denied (Minn. Oct. 16, 1984).
B. Racketeering as a Severity-Level Nine
Longo argues that the district court abused its discretion by ranking his racketeering conviction at a severity-level nine. We review a district court's severity-level determination for an abuse of discretion. State v. Bertsch , 707 N.W.2d 660, 666 (Minn. 2006).
When a district court sentences an offense that is designated as an unranked offense, the court "must assign an appropriate severity level for the offense and specify on the record why that particular level was assigned." Minn. Sent. Guidelines 2.A.4 (Supp. 2015). In doing so, the district court may consider the following factors: (1) "the gravity of the specific conduct underlying the unranked offense," (2) "the severity level assigned to any ranked offense with elements that are similar to the elements of the unranked offense," (3) "the conduct of and severity level assigned to other offenders for the same unranked offense," and (4) "the severity level assigned to other offenders engaged in similar conduct." Id. ; State v. Kenard , 606 N.W.2d 440, 443 (Minn. 2000). No single factor is controlling and the list of factors is not meant to be exhaustive. Kenard , 606 N.W.2d at 443.
Longo asserts that, with respect to the first factor, the district court "considered the fact that the underlying conduct was 'a series of drug sales.' " Longo argues that *611 the district court's consideration of this conduct was erroneous in light of the DSRA, which was intended to mitigate punishment for this type of conduct. But the record reflects that in considering the gravity of Longo's conduct, the district court found that "this was an ongoing drug enterprise ... that included using arson as a tool to collect debts." In fact, the district court found that the "gravity of not just the drug offenses , but the conduct around it associated with that to enforce the drug sales and drug debts ... actually exceeds the level 9." (Emphasis added.) Although the district court referenced an order from Longo to kill a dog belonging to the sheriff's daughter, an assertion that may not have been corroborated, the statement was made to emphasize Longo's conduct of "enforc[ing] drug sales and drug debts." The district court properly exercised its discretion in considering this factor.
With respect to the second factor, the district court referenced an unpublished case in which a severity-level ten was assigned after the defendant was convicted of racketeering. In assigning a severity-level nine here, the district court referenced the sophistication of Longo's drug scheme, but took into consideration that it was not as complicated as the scheme in the unpublished case, and assigned a lesser severity level accordingly. The district court did not abuse its discretion in considering the second Kenard factor.
Longo further argues that because the severity levels assigned to the offenses that constituted the predicate acts were lower than a severity-level nine, a severity-level eight should have been assigned. But although the district court admitted that it "struggled" with this factor, none of the Kenard factors is controlling. See 606 N.W.2d at 443 ("No single factor is controlling."). The district court considered all of the factors and found Longo's conduct of enforcing his drug sales and debts to be particularly troubling. Because the district court reasonably considered and applied the Kenard factors, the district court did not abuse its discretion by ranking Longo's racketeering conviction at level nine.
C. Hernandizing Longo's Sentence
Longo argues that the district court erred by using the Hernandez method to increase his criminal-history score. Under State v. Hernandez , a district court sentencing a defendant on the same day for multiple convictions based on multiple offenses that were not part of "a single behavioral incident or course of conduct" can increase the defendant's criminal-history score incrementally as each successive sentence is imposed. 311 N.W.2d 478, 481 (Minn. 1981).
Minnesota law prohibits the imposition of multiple sentences, including concurrent sentences, for multiple offenses that arise from a single behavioral incident. Minn. Stat. § 609.035, subd. 1 (2016). "Whether multiple offenses arose out of a single behavioral incident depends on the facts and circumstances of [a] particular case." State v. Bookwalter , 541 N.W.2d 290, 294 (Minn. 1995). When an offense is committed with the intent of facilitating another offense or is but a means toward committing another offense, the offenses are part of the same behavioral incident. State v. Hartfield , 459 N.W.2d 668, 670 (Minn. 1990). To determine whether multiple offenses arose from a single behavioral incident, this court examines whether they were motivated by a single criminal objective and whether they were unified in time and place. Bookwalter , 541 N.W.2d at 294.
Longo argues that his controlled-substance offenses were committed with the intent of facilitating and sustaining the racketeering offense and therefore were part of a single behavioral incident. We *612 agree. In State v. Huynh , this court held that the defendant's racketeering and extortion offenses were part of a single behavioral incident because the extortion offenses were a means toward committing the racketeering offense. 504 N.W.2d 477, 483 (Minn.App. 1993), aff'd , 519 N.W.2d 191 (Minn. 1994). Similarly, Longo's controlled-substance offenses were also a means toward facilitating and sustaining Longo's drug "enterprise" because the "enterprise" could not have been sustained without the sale of the controlled substances. See id. ("Huynh's five coercion offenses were a means of sustaining the RICO enterprise and a means toward committing the RICO offense...."). We therefore conclude that the district court could not lawfully sentence Longo for both racketeering and the controlled-substance offenses under section 609.035.
But section 609.910 contains an exception from the general prohibition against multiple sentences for offenses committed as part of a single behavioral incident. A criminal penalty imposed for racketeering under section 609.903"does not preclude the application of any other criminal penalty or civil remedy for the separate criminal acts." Minn. Stat. § 609.910, subd. 1.
Longo concedes that under section 609.910 he could be sentenced for racketeering and the offenses the state identified as the predicate criminal acts, which in this case constituted "the other counts in the complaint, other than conspiracy." But Longo argues that using the Hernandez method when sentencing on the separate criminal acts unfairly exaggerated his sentence. Again, we agree. "[T]he Hernandez method cannot be used to increase a defendant's criminal history score unless sentencing for more than one offense is permitted under section 609.035. Unless section 609.035 authorizes multiple sentencing, use of the Hernandez method unfairly exaggerates the criminality of a defendant's conduct." Huynh , 504 N.W.2d at 484 (citations omitted). We conclude that because sentencing Longo for both racketeering and controlled-substance offenses was permissible under section 609.910, rather than under section 609.035, the district court should not have used the Hernandez method.
The state contends that only the racketeering offense is subject to the single-behavioral-incident restriction of Huynh and section 609.035, and argues that because each of the controlled-substance offenses was a separate behavioral incident, using the Hernandez method for those offenses was permitted. But both Hartfield and Huynh make clear that "[u]nless section 609.035 authorizes multiple sentencing, use of the Hernandez method unfairly exaggerates the criminality of a defendant's conduct." Huynh , 504 N.W.2d at 484 (citing Hartfield , 459 N.W.2d at 670 ). The state's argument seems to overlook the fact that the underlying controlled-substance offenses were a means toward committing the racketeering offense and therefore part of a single behavioral incident. See Huynh , 504 N.W.2d at 483 (citing Hartfield in concluding that underlying coercion offenses were part of single behavioral incident as RICO enterprise). Hartfield precludes using the Hernandez method in such circumstances. We conclude that the district court erred in using the Hernandez method when it sentenced Longo.
V. Pro se arguments
Longo makes several arguments in his pro se supplemental brief, including that (A) the evidence is insufficient to support his convictions; (B) the prosecutor committed misconduct; (C) the district court erroneously instructed the jury; and (D) the state committed a variety of discovery violations.
*613 Because Longo's pro se brief contains no citation to legal authority to support his allegations, he has waived these pro se claims. See State v. Taylor , 869 N.W.2d 1, 22 (Minn. 2015) ("We deem arguments waived on appeal if a pro se supplemental brief contains no argument or citation to legal authority in support of the allegations." (quotation omitted) ); see also State v. Krosch , 642 N.W.2d 713, 719 (Minn. 2002) ("The brief contains no argument or citation to legal authority in support of the allegations and we therefore deem them waived.").
DECISION
The evidence is sufficient to sustain Longo's convictions of racketeering and first-degree controlled-substance crimes, and Longo is not entitled to a new trial based on prosecutorial misconduct or erroneous jury instructions. But the Hernandez method cannot be used to sentence Longo for both racketeering and controlled-substance crimes because multiple sentences under these circumstances unfairly exaggerate the criminality of the defendant's conduct. The district court therefore erred by using the Hernandez method when it sentenced Longo. Moreover, Longo is entitled to be resentenced in accordance with the DSRA. Accordingly, we affirm Longo's convictions, but reverse and remand for resentencing.
Affirmed in part, reversed in part, and remanded.

In his reply brief, Longo claims that by failing to cite Kelly , the state ignored his claim that the state's enterprise argument was limited to Longo's pawn and thrift shop business. But a review of the state's brief demonstrates that the state specifically addressed Longo's argument.